Sweeney, Appellant, *v.* Blue Anchor Beverage Co.

Argued December 4, 1936. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank J. Eustace, Jr.,* with him *Toll & Love,* and *Francis M. McAdams* of *Wilson & McAdams,* for appellant.

*Michael A. Foley,* with him *Henry I. Koplin,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 11, 1937:

This is an action in trespass. Plaintiff had a store in Philadelphia in which she sold cigars, candy, and soft drinks. On April 19, 1934, the defendant, with which she had business dealings for several years, delivered to her four cases of carbonated beverages, including ginger ale in 30-ounce bottles. Plaintiff removed the bottles from the cases in which they were delivered and placed them standing on the concrete floor alongside the ice box in her store. On April 20, 1934, a customer came for ginger ale. Plaintiff served him and then replaced the bottle in the ice box. After she did so, she turned around and her dress "caught" (as she testified) one of the 30-ounce bottles of ginger ale standing on the floor and tipped it over. According to plaintiff's testimony, the bottle then "exploded," though a little later in her testimony she refers to the bottle as having "broken." She said: "After it [the bottle] broke, the farthest piece was about eight feet [away]." Plaintiff's description of the injuries caused her by the exploded or broken bottle is meagre. She testified: "I went to put my foot down and I couldn't walk." Another witness testified that he called at plaintiff's store shortly after the occurrence in question and found

the plaintiff "holding a rag to her leg" and she asked the witness to go to a drug store "for some medicine." Plaintiff apparently expected the inference to be drawn that some of the broken glass lacerated her leg. The broken pieces of bottle were "cleaned up and put in the rubbish." No part of the bottle was produced in court.

The negligence pleaded was: (1) excessive pressure of gas in the 30-ounce glass bottle, (2) weakness in the glass bottle, and (3) failure to provide a wire mesh around the bottle. After trial, the court directed a verdict for the defendant. A new trial was asked for and refused. Plaintiff appealed.

The court below in its opinion said: "The plaintiff made no attempt whatever to prove excessive pressure, made no attempt to prove a weakness in the bottle, but did attempt by some hypothetical questions to establish negligence in that the defendant failed to encase the bottle of ginger ale in wire mesh. . . . Nowhere in the record is there any evidence that the defendant failed to employ the usual or customary practice in bottling its water." The court correctly held that "the burden was on the plaintiff to establish this fact, and the further fact that the other practice [if followed by defendant] was more dangerous than the customary method." The court also held that "it was the act of the plaintiff in upsetting the bottle on the concrete floor which was the efficient proximate cause of its breaking."

In the judgment of the court below we find no error. From the fact of the "explosion" or breaking of the bottle under the circumstances presented by the record, no inference of defendant's negligence could properly be drawn. When plaintiff carelessly or inadvertently knocked over the 30-ounce bottle, her act contributed some of the force which produced the "explosion" or breaking of the bottle. There is no evidence that the force contained in the liquid contents of the bottle was sufficient in itself to produce the "explosion." In fact,

the inference is the other way. The bottle standing on the floor since the day before, did not "explode" until plaintiff herself toppled it over. She cannot successfully contend that the defendant should have anticipated that its bottles of carbonated ginger ale would be toppled over on concrete floors and therefore should have made the bottles so strong, either by the addition of mesh or otherwise, as to prevent an "explosion" or breaking of the bottle and the scattering of fragments of glass in the event the bottle should be subjected to such treatment.

Plaintiff did not show that the defendant failed to follow the common usage of the bottling business in securing bottles sufficiently strong. Usage is a factor in the measurement of due care. A plaintiff seeking recovery in cases like this or in analogous cases must show either that the defendant did something which is so obviously dangerous to life and limb as to be at once recognized as such by all reasonably intelligent persons or that the precautions and safeguards customarily used in the conduct of a similar business had not been taken by the defendant. See *MacDougall v. Pa. Power & Light Co.*, 311 Pa. 387, 397, 166 A. 589. There is no proof here that the charge of carbonated liquid which the bottle contained was an obviously dangerous one. Neither is there any proof that the defendant in bottling this beverage failed to conform to that standard of care prescribed by the common usage of the business. Plaintiff called as for cross-examination the Vice-President and Treasurer of the defendant company. The substance of his testimony was that the defendant in bottling the beverages it sold employed the usual and customary method, that the bottles the company buys are guaranteed "to test at 300 pounds pressure," and that there is "32 pounds pressure in the bottle," and that "when it gets into normal temperature" it would be "about 64 pounds [to the square inch]."

The first assignment of error relates to the refusal of a new trial and the second and third assignments relate to the directed verdict. They are overruled. The fourth assignment of error is based on the refusal of the trial judge to permit a witness called by plaintiff to answer a hypothetical question. The witness identified himself as a "teacher of biological sciences." The question stated the facts that plaintiff's skirt "tipped over" the bottle of ginger ale, that "the bottle exploded" and "parts of the bottle flew and were found at various distances . . . some eight feet from where she had been." He was then asked if he could "form an opinion as to the cause of the breaking of the bottle." The court excluded this question. Wigmore on Evidence, 2nd edition, Vol. 1, sec. 682, page 1091, says: "The court may well interfere to prevent [hypothetical] questions which are under the circumstances practically valueless, and are either intended or fairly likely to mislead the jury." He states as one of the forms of "the abuse of this sort" of hypothetical question, a "method which calls certain facts having a bearing particularly favorable for the questioner's side or particularly unfavorable to the opponent's." The question stated in the assignment included no fact *as to the force with which the bottle was toppled over*. This omission was not due to any unfairness on the part of the questioner, for there was no evidence produced as to the degree of this force and apparently none available. In the absence of such evidence on this undoubted factor in the occurrence, the court was justified in refusing to permit the witness to give his opinion as to the cause "of the breaking of the bottle." For him to have answered: "The weakness of the glass or the excessiveness of the pressure," would have been misleading to the jury (if the case had gone to the jury) and unfair to the defendant. Even empty bottles when upset on hard floors break and their fragments are sometimes scattered over several feet. It is a propensity of shattered glass to scatter. It takes

some force to break glass, and the breaking itself releases certain pent up forces in the glass. It is also a rule in respect to hypothetical questions that "the tribunal will not listen to conclusions or opinions from persons who possess no more skill than the tribunal itself in drawing inferences from the premises": Wigmore, sec. 679. Without questioning the skill, along certain lines, of the witness who described himself as above stated, and who further replied affirmatively to a question as to whether or not he was "familiar with the chemical and physical forces involved in a bottle of ginger ale," we think it is obvious that, under the state of the record, the witness was no better qualified than was the tribunal itself to draw an inference as to the cause of the breaking of the bottle. In the absence of evidence that the bottle was "tilted" so gently or harmlessly on the floor as to make the tilting no factor in the breaking, the witness's opinion as to what caused the bottle's breaking would have been a mere conjecture. Such opinions are inadmissible. "No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture": 22 C. J., sec. 735, page 640; *Pittsburgh Gas Engine Co. v. S. S. Elec. Mfg. Co.,* 43 Pa. Superior Ct. 485. When a 30-ounce bottle is toppled over on a concrete floor and breaks, the obvious conclusion is that the toppling over was the cause of its breaking. For an "expert" to be permitted to assign any *other cause,* without first eliminating the apparently causal factor, would be to make his testimony a mere matter of guesswork. On the admissibility of a hypothetical question, "the only true criterion is: On this subject can a jury from *this person* receive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject": Wigmore, sec. 1923. As the record stood, the witness's opinion on the question asked

him could have been of no appreciable help to the jury. This assignment is overruled.

The 5th, 6th, 7th, and 9th assignments of error are based on the refusal of the court below to permit this same witness to answer hypothetical questions similar in form and content to the one above discussed, and the court's refusal to permit the witness to answer them was proper, for the reasons we have given in discussing the third assignment of error.

The 8th assignment of error is based on the refusal of the court below to permit the expert witness to answer the following question: "If a bottle containing a charged beverage is covered by wicker or wire mesh, what would be the effect of that covering, if a bottle breaks or explodes?" The tribunal was as competent as was the witness to answer the question, if it was a proper one. Furthermore, the question was irrelevant and immaterial. The absence of wire mesh on the bottle was not sufficient to convict defendant of negligence. "The law does not exact a degree of care in guarding any article which will make the great majority of the possessors of that article chargeable with habitual or continuous negligence. Due care in any case is the care usually exercised by men of ordinary prudence in like cases and under like circumstances. This is the standard by which the conduct of those charged with negligence is measured [citing cases]": 20 R. C. L., sec. 20, page 28. This assignment is overruled.

The 10th assignment is based on the court's sustaining the objection of defendant's counsel to a question asked the same witness, which was in substance whether contact of the bottle with the floor was alone sufficient to cause the bottle to break and the parts to fly eight feet. As we have already said, there is no proof as to the degree of violence of the bottle's contact with the floor. In the absence of such proof, the witness's answer to the above question would have to be based on surmise.

"A mere surmise of the witness should be excluded, and hence even a skilled witness cannot state what in his opinion might possibly ensue from a given state of facts, but is confined to those things which are reasonably probable": 22 C. J., sec. 740, page 648.

The 11th assignment of error is based on the court's sustaining the objection of defendant's counsel to an attempt to elicit the witness's opinion as to whether "it is the proper practice to use bottles as containers for ginger ale without subjecting them to a test for pressure resistance." The court properly said: "He knows nothing about the practice . . . and he has already stated that it is not done, as to testing each bottle as it comes back."

The 12th assignment of error is based on the court's refusal to allow the witness to testify whether or not "it is a safe practice to use bottles as containers for ginger ale without subjecting them to a test for pressure resistance." The 13th assignment is based on the court's refusal to allow the witness to testify whether or not "it is a safe practice to use old bottles, that is, bottles that have once gone through the filling process . . . without subjecting them to a test for pressure resistance." An expert cannot be permitted to testify whether or not a certain practice is a "safe one," though he may, if properly qualified, testify whether or not the common usage of a business had been adhered to by the defendant. "The test of negligence is the ordinary usage of the business": *Ford v. Anderson,* 139 Pa. 261, 21 A. 18, unless, as stated above, a custom is so *obviously dangerous* as to be easily recognizable as such. An act cannot be branded as negligence because some expert or alleged expert characterizes it as an unsafe practice.

The 14th assignment of error is based upon the court's ruling out of the following question: "Where a bottle is tilted so as to fall over on a cement floor, to the same level as it had been standing, does the pressure involved in such an action exceed 1,200 pounds?" The relevancy

of this question does not appear and it was properly excluded.

The weakness of plaintiff's case is that she failed to offer competent proof of the negligence pleaded. She didn't even prove the explosion pleaded. "Explosion" connotes a violent expansion of some force, accompanied by noise. All plaintiff proved was that a standing 30-ounce ginger ale bottle when tipped over by her dress coming in contact with it, broke and fragments of glass were scattered about. There is no doubt that the expansive power of the gas in the bottle put some force behind the glass fragments but the obvious inference is that the *breaking* of the bottle was due to its violent contact with the concrete floor. The cause of this contact was plaintiff's own want of due care.

Plaintiff cites cases from other jurisdictions. We find none of these with which the conclusion we have reached in this case is at variance. In *Payne v. Rome Coca-Cola Bottling Co.,* 10 Ga. App. 762, 73 S. E. 1087, the court did *not* hold, as contended in appellant's paper book, that "the explosion of a ginger ale bottle, unopened from its delivery by the bottler, was held to give rise to 'an inference of negligence.'" On the contrary, that court did not pass upon that question, saying in its opinion: "As to whether an inference of negligence would arise against the manufacturers *upon mere proof of the explosion, without more, we express no opinion* [italics supplied]." However, it did hold that an inference of negligence on the part of the manufacturer arises, "when it is shown that all the persons through whose hands the bottle had passed were free from fault" and that "the condition of the bottle and its contents had not been changed since it left the defendant's possession."

In *Grant v. Graham Chero-Cola Bottling Co.,* 176 N. C. 256, 97 S. E. 27, strongly relied upon by appellant, there was evidence that the plaintiff, a merchant, went "to the refrigerator to get a bottle for a customer," and "upon lifting the top, and *without touching any of the*

*bottles* one of them burst," injuring the plaintiff, that *"both prior and subsequent to the plaintiff's injury bottles of defendant had burst* [italics supplied] injuring numerous other persons under similar circumstances," and that "plaintiff used these bottles in his business in the usual and customary way in which merchants purchasing such merchandise used and handled it." The Supreme Court of North Carolina said in that case: "The evidence that other plants put up bottles of such beverages, which frequently exploded in like manner during the bottling, during transportation, and in the hands of customers, was not evidence that they were reasonable and prudent men, but, on the contrary, that they were as careless and negligent in their duty to the public and to their customers as this defendant. It does not exonerate this defendant that other establishments were careless and negligent. It is very certain that these establishments are not discharging their duty to the public and to their customers in putting out goods so prepared and bottled that there are numerous explosions liable to cause injury at any time, and which not infrequently have done so, as in *Dail v. Taylor,* 151 N. C. 284, 66 S. E. 135, and *Cashwell v. Bottling Works,* 174 N. C. 324, 93 S. E. 901. . . . It is certainly no defense for the defendant, who has placed dangerous and highly explosive merchandise upon the market which it knows has often exploded to the injury of its customers and others to claim that other vendors and manufacturers in their pursuit of gain have been as indifferent to the safety of their customers and the public as the defendant iself." In *Dail v. Taylor,* supra, the Supreme Court of North Carolina held that evidence of the explosion of a single bottle of Coca-Cola was not sufficient to carry to the jury the question of the negligence of the one who bottled it, under the doctrine of "res ipsa loquitur." The court stated that, while Coca-Cola seems to be a recognized article of merchandise not usually or necessarily dangerous under ordinary

conditions, the evidence showed that it was put up in glass bottles charged with gas to a pressure of not less than 60 pounds to the square inch, and in this instance shipped in cases or crates for quite a distance, and handled in various ways and by different parties, and that such facts presented a case where it would be entirely unsafe to permit the application of the principle contended for, or to hold that the explosion of *one single bottle* of such an article, under such circumstances, *should of itself rise to the dignity of legal evidence, sufficient, without more, to carry a case to the jury.* (Italics supplied.)

In *Coca-Cola B. Co. v. Shelton,* 214 Ky. 118, 282 S. W. 778, also cited by appellant, an injury was sustained by a young girl while placing Coca-Cola bottles in a tank of cold water, "there being a simultaneous explosion of three bottles," and "explosions of Coca-Cola bottles during the day at various places of sale . . . occurred while the bottles were being handled, others while in the cooling boxes, and still others while in the cases at the places of delivery, without being handled or touched by the dealer or consumer." The court held in that case: "Ordinarily Coca-Cola is considered a harmless beverage, and not inherently dangerous, but on this occasion numerous (27) bottles exploded, under a variety of circumstances—some of them while in the cases without even being handled or touched by the dealer. From these facts it may be inferred that they were defective or were improperly charged, matters exclusively under the control of defendant, and presumably within its knowledge, and that, when delivered, their condition was such as to render them imminently, if not intrinsically, dangerous. It is true that in *Stone v. Van Noy News Co.,* 153 Ky. 240, 154 S. W. 1092, we held that the explosion of a single bottle of soda pop was not alone sufficient to show negligence in bottling, but it was strongly intimated that the rule would be otherwise if numerous explosions were shown, and this is in line

with the current of authority." In *Stolle v. Anheuser-Busch*, 307 Mo. 520, 271 S. W. 497, cited by appellant, the evidence was that a customer, in due course of business, purchased a bottle of beer from a storekeeper and carried it from the grocery store into the butcher shop and placed it upon a counter, where a few minutes later, it exploded and injured plaintiff's wife. Respondent in that case claimed that the doctrine of res ipsa loquitur applied and the court so held. In *Riecke v. Anheuser-Busch*, 206 Mo. App. 246, 227 S. W. 631, also cited by appellant, the plaintiff was injured while upon a tour of inspection of defendant's plant when a bottle filled with liquid and being handled by one of defendant's employees, exploded. The St. Louis Court of Appeals held that the doctrine of res ipsa loquitur applied. The facts in that case are obviously distinguishable from the facts in the case at bar.

The doctrine of res ipsa loquitur is manifestly inapplicable to the instant case.

All the assignments of error are overruled.

The judgment is affirmed.