Griffin, Appellant, *v.* National Mining Company.

Argued April 27, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*R. R. McWhinney,* for appellant.

*P. K. Motheral,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellee.

OPINION BY CUNNINGHAM, J., July 15, 1937:

The claim petition in this workmen's compensation case was filed by Lucille Griffin as the alleged widow of Milton George Griffin, an employee of the defendant mining company, in behalf of herself and their three dependent children. For reasons with which we are not now concerned, the compensation authorities concluded that the relation of the petitioner to the decedent did not entitle her to an award of compensation as his widow even if Griffin's death should be found to be compensable and that the only claimants entitled to consideration were the three children. Lucille Griffin took no appeal from this finding; her claim, therefore, disappeared from the case. The referee awarded compensation to the children; the board affirmed the award, but the court below sustained the exceptions of the employer to the action of the compensation authorities and entered judgment in its favor. We now have before us for disposition an appeal from that judgment.

The decedent had been employed for a number of years by the mining company as a miner and coal loader. On July 18, 1934, he was engaged in his usual work of loading mine cars with coal and had loaded four cars by noon. Shortly after twelve o'clock his dead body was found partially under an empty car he had been pushing along a mine track toward the face of the room of the mine in which he had been working. No one saw how he got into this position and the issue in the case was whether his death resulted from a natural cause or from an "accident," within the meaning of the statute.

There was no question that Griffin's death occurred in the course of his employment and the inference

drawn by the referee and board from the evidence adduced at the hearings was that it was accidental. In the case of *Burrell v. Inland Collieries Company and State Workmen's Insurance Fund*, 127 Pa. Superior Ct. 510, 193 A. 439, we reviewed at considerable length the cases on each side of the line which must be drawn when the dead body of an employee is found on the premises of his employer at or near his regular place of work and no one knows exactly how it got there. For present purposes, it is only necessary to refer to the general principles involved in such cases. When death is accidental, it is not incumbent upon a claimant to show the exact nature of the accident or just how it occurred. Where the marks upon a deceased employee's person tend to show an accident and no facts appear indicating anything to the contrary, a finding by the compensation authorities that the death was accidental should be sustained.

There is competent evidence upon this record of these circumstances. It was the duty of decedent to bring in empty cars from a switch about one hundred and twenty-five feet from the face of his working place. A fellow workman, engaged in "fixing up entries," testified that shortly before his body was found Griffin, while pushing a car over the track leading to his working place, asked the witness "to give him a push." He added: "I did and he said for me to give another push, and then the car was running and I go back and work myself." There was a slight ascending grade towards decedent's working place and the track over which he was pushing the car was constructed of rails of different weights and heights. As expressed by one of the witnesses, "You would have to push until you got over the little hill and it would drift onto the face." At the point where the stopped car and the body were found there was a difference of about one inch in elevation, where one size of rails joined the other. In describing

the position of the body, W. R. Brinley, the superintendent of the mine, testified: "Q. Will you describe the position of the body as it was when you first saw it? A. Yes, sir. It was lying face down, both hands back, the right leg was under the car about, well, would say, four inches on the left side of the bumper under the car. Q. Was any part of the car touching the body? A. No, it was in the clear, and the back wheel nearest the body was about eight inches from the crotch. The left leg was thrown around in the clear of the front wheel nearest the body. The heel of the left boot was under the back wheel, that is it was sort of blocking the wheel, it wasn't under it, it couldn't get under it. That was the only part of the body that was in contact with the car, the heel of the left boot. ...... Q. How much of the man's body was covered by the body of the car? A. Well, I should say about up—. Q. Where? A. Up to the thigh, the middle of the thigh, right one."

The testimony of the undertaker and two physicians who examined the body as soon as it was removed from the mine sustained these findings by the referee relative to the injuries found upon the body: "Claimant had an abrasion of the lower lip, a cut on his left eyelid, the nose was badly cut, almost severed from the end to the bridge on the left side. The right teeth were loosened. There was an abrasion across the ear. The nasal passages were filled with coal dust and particles of coal were likewise in the mouth. There was blood on the [face] from the nose and the lip. Brush burns were evidenced on the knees and elbows." The physicians testified, however, that they found no evidence of a fracture of the skull and that in their opinion the external injuries were not sufficient to cause death. The claimant refused to permit an autopsy and neither physician was willing to express an opinion with respect to the cause of death. The claimant testified decedent was

forty-four years of age, worked every day the mine was in operation, was in the best of health and never had medical treatment.

If this were all the evidence the award of compensation could be sustained. There was, however, another item of evidence introduced in behalf of the defendant in the form of a certified copy of the record of the death of Griffin as registered with the Bureau of Vital Statistics of the Department of Health, under the provisions of Section 21 of the Act of June 7, 1915, P. L. 900, 35 PS §451. The original certificate purports to have been made by B. C. McTighe, a deputy coroner of Allegheny County. In it, the answer to the question, "Cause of Death?" reads, "Chronic Myocarditis." No attempt was made to contradict or explain this positive statement in the certificate, nor was the responsible official who made it called as a witness.

Questions with relation to the admissibility and probative value of certified copies of death certificates issued under Section 21 of the Act of 1915, (which, as to the matter now in hand, has not been modified by the amendments to the statute) have been before us in several cases. The provision of the statute is that copies, properly certified, "shall be prima facie evidence in all courts and places of the facts therein stated." In *Borgon v. John Hancock M. L. Ins. Co.,* 99 Pa. Superior Ct. 377, attention was directed to the differences of opinion prevailing in various jurisdictions as to whether such a provision in a statute permits the introduction of the certificate as evidence of the *cause,* or merely of the *fact,* of death. We there held that, at best, such certificates are only prima facie evidence of any fact therein stated and are open to explanation and contradiction by an opposing party. The cases are fully reviewed in that opinion, and it was suggested, but not decided, that as the title contains no notice of any change in the law of evidence this feature of the statute

is open to some question as to its constitutionality. The constitutionality of the statute was not raised in that case, nor is it here raised, and we therefore express no opinion upon it. See also *Trotter v. Industrial Health, Accident and Life Ins. Co.,* 115 Pa. Superior Ct. 487, 175 A. 884.

In *Allegheny Trust Company v. State Life Ins. Co.,* 110 Pa. Superior Ct. 37, 167 A. 251, we again held that a properly certified copy of a death certificate was competent evidence of the fact of death, and, if admissible as to the cause, was not conclusive. A similar holding by a federal court will be found in *Jensen v. Continental Life Ins. Co.,* 28 F. (2d) 545.

Under these authorities the certificate was admissible, but by no means conclusive, in this case. We feel, as did the court below, that its presence in the evidence takes the case out of the operation of the rules to which we have referred, because it amounts to some "evidence to the contrary" of the conclusions of the compensation authorities and, in the absence of contradiction or explanation, is an item of evidence indicating death from a natural cause. There can be no question that the decedent suffered a sudden fall while pushing the coal car. As the evidence now stands, it may have been caused by his foot slipping, or, with equal probability, by a heart attack. The external injuries would probably have been the same in either case. If it was caused by a heart attack, we then have in this case the additional question whether the attack was precipitated by over-exertion in pushing the car.

In our opinion, this case cannot be properly disposed of without some explanation of the official statement that Griffith's death resulted from a chronic heart condition.

In *Satonik v. Jeddo Highland Coal Co.,* 127 Pa. Superior Ct. 584, 193 A. 445, we indicated the class of cases in which the common pleas, when it sustains ex-

ceptions to the action of the board, should, as authorized by Section 6 of the amendatory act of June 26, 1919, P. L. 642, 77 PS § 879, remit the record to the board for further hearing and determination, instead of entering a final judgment. We think this case belongs to the class of cases in which that procedure should be followed.

Judgment reversed and record remitted to the court below to the end that it may be returned to the board for further proceedings not inconsistent with this opinion.