Heinold *v.* Pittsburgh Brass Mfg. Co. et al.,
Appellants.

Argued May 6, 1942.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*James J. Burns, Jr.,* with him *Gustav M. Berg,* for
appellants.

*George V. Moore,* for appellee.

Opinion by Cunningham, J., July 23, 1942:

Andrew Heinold, claimant's husband, died suddenly on July 20, 1936, while in the course of his employment as a molder in the foundry room of the defendant brass manufacturing company. Contending that this employee's death was caused by "heat exhaustion"—an unusual, extraordinary and not to be expected pathological result of exposing himself to the atmospheric conditions then prevailing in his working place—his widow sought compensation for herself and three children, under the age of sixteen, upon the theory that the death was "accidental" within the intendment of Section 301 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §§ 411, 431.

The proceeding was originally instituted in August, 1936, and resulted in an award by a referee, affirmed by the board, upon which a judgment was entered by the court below. An appeal from that judgment by the employer and its insurance carrier to this court was argued on May 6, 1938. In an opinion, reported in 132 Pa. Superior Ct. 400, 200 A. 947, we reversed the judgment, primarily upon the following ground: "The referee made a personal investigation of the place where decedent worked and questioned workmen there. The results of the investigation were not placed on record, neither does it appear that the parties were given an opportunity to question, explain or interpret by proper examination or cross-examination, the matters which came to his knowledge."

The record was remanded for further proceedings not inconsistent with that opinion and was duly returned to the referee to afford the parties an opportunity to take such additional testimony as they might desire.

After a hearing before the referee on October 25, 1938, he made new findings of fact based, as he avers, solely upon the evidence appearing upon the record. The findings here material read:

"Fourth ...... That on July 20, 1936, at or about 8:00 A.M. deceased [54 years of age] reported for work in defendant's foundry room where he was engaged in the manufacture of brass and bronze molds, weighing about 60 lbs. each, which he carried from the furnace room to the mold bench. Deceased worked until 11:00 A.M. at which time he was discovered lying on his face. According to the U. S. weather report, there is a tem-· perature recorded of 71 degrees at 9:00 A.M.; 73 degrees at 10:00 A.M. and 74 degrees at 11:00 A.M. From the evidence submitted the temperature in the foundry and furnace rooms was at least 25 to 30 degrees higher than outside, therefore deceased was taken to the outside to get a little air and rested until about 12:30 when he returned to work. Deceased then worked until between three and four o'clock in the afternoon, at which time there is a recorded [outside] temperature of 79 degrees, when he again collapsed and was taken to the outside, dying at four o'clock.

"Fifth.  Your referee further finds as a fact that the deceased died as a result of heat exhaustion produced while working during continuous and extreme heat and that the said death was not the natural and usual consequence of such exposure but on the contrary was the unexpected result of such exposure and labor."

Upon these findings the referee made an award in accordance with the provisions of the statute in force at the date of the occurrence. The board affirmed the findings, conclusions of law and award, of the referee; the court below, in an able opinion reviewing the evidence and citing the then recent case of *Parks v. Miller P. Mach. Co.*, 336 Pa. 455, 9 A. 2d 742, entered judgment on the award. This appeal by the employer and its insurance carrier followed.

The only question of law here involved is whether the above findings of fact are supported by substantial and competent evidence.

There is a conflict in the evidence relative to the

approximate temperatures inside the one-story brick building, with a ventilated flat roof, in which the deceased was working. The room in which he was stricken contained "two open flame furnaces and three pit furnaces," separated from the molding benches by a "sheet and steel" partition containing a door. H. F. Brennan, president of the defendant company, expressed his opinion that when the furnaces were in operation the temperature in the room would be "about ten degrees" higher than the outside temperature. But John Knight, who was working near Heinold and took him out of the room when he first collapsed, testified he "[didn't] know how hot it was" that day, but said it was "one of them close, sultry days," and, in his opinion, "just about twenty-five to thirty degrees hotter" where they were working than outside.

It was within the exclusive province of the referee and board to decide which estimate they would adopt. The fourth finding is therefore adequately supported by competent evidence.

Upon the question of causal connection, covered by the fifth finding, but one medical expert, Dr. Paul H. Franklin, was called. Testifying for the claimant and in response to a hypothetical question reciting the relevant facts, he expressed his definite professional opinion that "heat and exhaustion caused" Heinold's death. By reason of some reference to a possible cerebral hemorrhage and to a coroner's certificate assigning a coronary occlusion as the cause of death, although no autopsy was performed, Dr. Franklin eliminated both of these possibilities in this manner:

"...... We find that following [decedent's first collapse] he showed no evidence of paralysis because after being taken out where there was more air and less heat, he revived to the point where he drank milk and resumed his work, if a *cerebral plegia* [i. e. stroke] had occurred that would not be the case. On the other hand if that attack had been due to *coronary artery and oc-*

*clusion,* it is most improbable that he would have resumed work until three o'clock. I feel that by the process of elimination and the facts that we have that this death was caused by *heat and exhaustion"* (Italics supplied.)

As early as 1918, our Supreme Court held in *Lane v. Horn & Hardart B. Co.,* 261 Pa. 329, 104 A. 615, that heat exhaustion overtaking an employee in the course of his employment may be considered an "injury by an accident" within the meaning of the statute. This case is similar, on its facts, to *Trovato v. W. McCahan Ref. Co.,* 122 Pa. Superior Ct. 499, 186 A. 163, and, in principle, to *Clancy v. Booth & Flinn Co. et al.,* 109 Pa. Superior Ct. 452, 167 A. 393, and *Consentino v. Union Paving Co.,* 113 Pa. Superior Ct. 295, 173 A. 470. It is readily distinguishable from *Howey v. Peppard Bros. et al.,* 108 Pa. Superior Ct. 119, 164 A. 920, where the stricken employee had walked about two miles to work on an afternoon when the outside temperature was unusually hot and suffered a sunstroke before he had entered upon any of the duties of his employment; his attending physician disclaimed any knowledge of what caused the sunstroke,—whether it was a result of exposure to the sun on his way to work, or afterwards.

We agree with the court below that the case now at bar falls within the second group of Mr. Justice STERN's classification in *Parks v. Miller P. Mach. Co.,* supra, of "cases in which prostration is suffered or disease contracted as the result of exposure to excessive heat, cold or other unusual environmental conditions, and the question arises whether such circumstances can be said to constitute an 'accident.' "

At page 459 he continued: "The second group consists of cases where the work or act performed by the employe is voluntary, and not marked by any abnormal or unusual feature, but where there occurs an unexpected and unusual pathological result, that is to say,

where *the accident resides in the extraordinary nature of the effect* rather than in the cause." (Italics supplied.) With special reference to sunstroke and heat prostration cases forming a part of this group, it was said: "These rest upon the theory that the prostration is not the natural, probable and predictable result of an exposure to the prevailing conditions, but constitutes an extraordinary and unlooked-for mishap visited suddenly upon the employe while at work."

That the prostration and death of claimant's husband was an "extraordinary and unlooked-for mishap" is apparent from the following excerpt from the testimony of Dr. Franklin: "Q. Wouldn't the other men be equally affected, there evidently was more than one man in the plant? A. I do not think that is important because at any time ten men might work under the same conditions and only one suffer from the same conditions, some people are more susceptible due to their own general condition than others, one man might go in and go through all right and another might be affected."

This case is ruled against appellants so clearly by the decision of the Supreme Court from which we have quoted that none of the assignments of error has the slightest merit; they are severally overruled.

Judgment affirmed.