## Toland v. Murphy Brothers, Appellants.

Argued September 29, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Frederick L. Fuges,* for appellants.

*Alexander F. Barbieri,* for appellee.

OPINION BY RENO, J., January 20, 1953:

The employer and insurance carrier appealed from an order of the court below sustaining the findings of

the Workmen's Compensation Board which awarded compensation to claimant for a total disability resulting from a heat stroke and $2,051.50 for nursing services.[1]

The basic question is whether the heat stroke which claimant admittedly suffered while at work on July 29, 1949, was an accident within the meaning of the Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, §301(c), as amended, 77 P.S. §411.

Claimant, aged 38, in robust health, except for a possible arthritic condition, was a painter, working at his trade at a new printing plant in Wayne, a suburb of Philadelphia. A meteorologist employed by the United States Weather Bureau testified that the temperature in the Philadelphia area on July 28 and July 29, 1949 was in the middle 90's, 10 degrees above normal, and reached 95 on July 28th and 96 on July 29th. On July 28th claimant was painting on the outside of the plant; and at noon, the heat having become stifling, he stated that he was not feeling well, and was driven to his home by a fellow workman who had also quit his work for the same reason. During the evening a thunderstorm cooled the temperature to 71 degrees and the next morning claimant returned to his work, apparently fully recovered from the slight indisposition of the preceding day.

. On July 29th claimant alone was painting the interior walls of a toilet room, (3 feet 8 inches wide, 6 feet 9 inches long, 9 feet from floor to ceiling) in the one-story plant, with a slag roof, without shade above it or ventilation or circulating air in it. The toilet

---

[1] The claim of $360.00 for blood transfusions was allowed by the referee but denied by the Board and the court below, since it was repaid by voluntary replacements to the blood bank by claimant's friends and family. Claimant did not appeal to this Court from the order of the court below and the question is not before us.

room was part of a wash room (15 feet long by 6 feet 9 inches wide) which had no windows or ventilators but did have three doors, none of which led to the outside, and with little or no circulation of air. After eating his lunch on the outside, he resumed his work, and an hour later stumbled through the swinging doors into the wash room where he became unconscious. His fellow workmen attempted to revive him without success and he was taken to the Bryn Mawr Hospital where his rectal temperature registered 109 degrees, and was found to be in a critical condition. Perspiration ceased, congestion of his vital organs followed, and eventually his condition was diagnosed as encephalopathy, a destruction of basal ganglia in the brain.[2] He was transferred to the Valley Forge Army Hospital and has remained a helpless and perhaps a hopeless charge in veteran's institutions ever since.

This brief paraphrase of the Board's findings must be supplemented by excerpts from the medical testimony. Three doctors were called by the claimant and unanimously declared that he had suffered a heat stroke. Dr. Luigi A. Principato, the chief medical resident at the Bryn Mawr Hospital, who attended the claimant, in describing the causes for heat stroke, referred to "excessive amount of heat and inadequate air circulation." Dr. George Wilson testified: "I think that working in that place without ventilation and in a very small area such as that one that you have depicted, I should say that was certainly very contributing." Under cross-examination he testified: "This, of course, is difficult to prove but it is generally accepted that if it is hot and humid and no circulation of air that there is more of a tendency toward these heat

---

[2] The complete diagnosis was hepatitis (a liver infection), encephalcpathy (brain damage), and broncho-pneumonia.

conditions than there is if the temperature, let us say, is higher and you are outside and there is a little wind blowing." Fixing the time when the heat stroke occurred, Dr. Benjamin A. Gouley testified: "On the basis of the man's medical history, on the basis of sudden collapse, coma, being taken soon thereafter to a hospital where his temperature was found to be 109 degrees, it is my opinion that the man suffered from a heat stroke. Q. Caused on what date? A. On that date, yes. Q. On July 29th? A. Oh, yes. It occurred on July 29th."

On the basis of all the testimony the Board found "that the claimant was subjected to conditions somewhat more intolerable than the public generally." The finding is supported by the evidence and is binding upon this Court.

Appellants argue that the heat stroke was not an accident, that it resulted from a protracted exposure to the prevailing heat of two days, and was not a sudden, unexpected event. The contention is based partially upon the testimony of Dr. Principato who placed the onset of the heat stroke at noon of the preceding day. His testimony, however, was based in part upon statements allegedly made by claimant's brother and sister-in-law while claimant was in a coma. The statements were clearly hearsay to which timely objection was entered, and they afforded no basis for a medical opinion as to the cause of the injury.[3] Moreover, they were denied by the brother and his wife. The conflict in the medical testimony produced by Dr. Principato was resolved by the Board against appellant's conten-

---

[3] Professional opinion based upon assumed facts, not established by the evidence, may not form the basis of a finding. *Cope v. Phila. Toilet Laundry & Supply Co.*, 167 Pa. Superior Ct. 205, 74 A. 2d 775, and the cases there cited.

tion, and it was authorized to weigh the evidence, to determine the credibility of the witnesses, and draw reasonable inferences. *Williams v. Jones & Laughlin Steel Corp.,* 155 Pa. Superior Ct. 435, 38 A. 2d 343.

At all events, claimant did not suffer a heat stroke on July 28th. The accepted medical testimony is that a coma is the invariable concomitant of heat prostration, and certainly there was none on July 28th. It does not seem possible that a man should suffer heat strokes on two successive days, but if so, the heat stroke of July 28th was plainly suffered in the course of claimant's employment. The rational view of the case, established by the evidence, is that on July 28th claimant discovered that work on the outside in the direct rays of the sun was too oppressive and he quit for the day. On the following day, refreshed by his rest and cooled by the thunderstorm, he returned to his work in a normal condition, and while painting in a tiny room, without circulating air, he was overcome by the heat and collapsed. That he was subjected to conditions differing from those of his co-workers is shown by the fact that none of them succumbed during that day. In the words of *Parks v. Miller Printing Machine Co.,* 336 Pa. 455, 459, 9 A. 2d 742, claimant's right to recover rests "upon the theory that the prostration is not the natural, probable and predictable result of an exposure to the prevailing conditions, but constitutes an extraordinary and unlooked-for mishap visited suddenly upon the employe while at work."[4]

*Trovato v. McCahan Sugar Refining Co.,* 122 Pa. Superior Ct. 499, 186 A. 163, appellants' principal reliance, is irrelevant to this factual situation. There, the question was whether the employe's exposure to

---

[4] See also the cases cited in the *Parks* case, supra, and *Russell v. Scott Paper Co.,* 140 Pa. Superior Ct. 84, 13 A. 2d 81; *Heinold v. Pittsburgh Brass Mfg. Co.,* 149 Pa. Superior Ct. 409, 27 A. 2d 267.

unusually high temperatures occurred in the course of his employment in the employer's boiler room or on the outside of the plant and not in the course of his employment. That is to say, the question was whether the conditions causing the heat stroke were experienced by the employe while he was at work or outside of working hours. Here we do not meet that question. Claimant's reactions to heat were experienced only while he was working; first, on July 28th when he left his work because of the heat and retired to his home; and second, on July 29th when he collapsed while at work. In the interim he was not, so far as the testimony shows, exposed to heat beyond that of other persons and the thunderstorm during that night had materially reduced the temperature.

As to the nursing services the Board reported: "His [claimant's] condition was so critical that 'round the clock attention was demanded and this service could not be supplied by the nurses working in the hospital. Under the circumstances attendance by private nurses in three shifts was essential and Dr. Principato has so testified." It formally found: "As a part of his necessary hospital expense, the claimant incurred within the first 90 days, a nursing bill of $1,825.00, plus a nurses board bill of $226.50." The Board awarded this sum in addition to $630.00 allowed by the referee for bills paid to the hospital, an allowance affirmed by the Board.

Appellants' contention is that the Act of 1939, supra, §306(f), as amended, 77 P.S. §531, which requires the employer to furnish "hospital treatment" eliminated the obligation imposed by the Act of June 4, 1937, P. L. 1552, §1, to supply "nursing services." The contention is without merit. The cited section of the Act of 1939 is virtually a re-enactment of the phraseology of the original Workmen's Compensation Act of

June 2, 1915, P. L. 736, §306(e) where the term "hospital services" was employed.[5] Under the Act of 1915, in a case where a claim for "$90 nurses' fees" was entered and allowed, this Court held: "All the services rendered were part of the hospital treatment reasonably required, and the charges therefor were properly allowed": *Piotrowski v. Dey Co.*, 123 Pa. Superior Ct. 29, 33, 185 A. 862, citing *Denne v. Plymouth Coal Co.*, 91 Pa. Superior Ct. 429. This Court thereby held that "hospital services" in the Act of 1939 included nursing services. "This being so, the general rule applies that where in a later act the legislature uses the same language as in a prior cognate statute, which had been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way it previously had been when considering the earlier statute": *Buhl's Estate*, 300 Pa. 29, 32, 150 A. 86.[6] The exclusion of "nursing services" provided for by the Act of 1937 from the provisions of the Act of 1939 is without significance. "Hospital treatment", under the Act of 1939, indubitably includes the services of nurses, and their board where, as here, payment of private nurses' board is required by the hospital.

Inadvertently the court below failed to enter the final judgment[7] enjoined by the Act of 1939, supra,

[5] Between "hospital services" and "hospital treatment" there is no discernible difference.

[6] See also *Spangler's Estate*, 281 Pa. 118, 126 A. 252; *Bell v. Bell*, 287 Pa. 269, 135 A. 219; *Desh's Estate*, 321 Pa. 286, 184 A. 111; *Lower Nazareth Township Supervisors' Appeal*, 341 Pa. 171, 19 A. 2d 92; *Burtt Will*, 353 Pa. 217, 44 A. 2d 670; Statutory Construction Act of May 28, 1937, P. L. 1019, §52, 46 P.S. §552. Judge Hirt's comment in *Sekel v. Iagenemma*, 170 Pa. Superior Ct. 621, 623, 90 A. 2d 587, is based upon the same principle.

[7] The so-called "final judgment" was as follows: "Jan. 21, 1952. The findings of the Workmen's Compensation Board are sustained. Defendant's exceptions are dismissed.

§427, as amended, 77 P.S. §878. Consequently the appeal was premature but no objection was entered upon that ground. Our order will allow the court below to correct the defect.

The order sustaining the findings of the Board is affirmed and the record is remanded to the court below with direction to enter a final judgment for the claimant in accordance with the award and the Act of 1939, supra.