Castor *v.* Ruffing et al., Appellants.

Argued November 18, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT and ERVIN, JJ. (WOOD-SIDE, J., absent).

*John T. Conner*, with him *Dalzell, Pringle, Bredin & Martin*, for appellants.

*J. A. Williams,* with him *Vesely & Williams,* for appellee.

OPINION BY ROSS, J., March 24, 1955:

In this workmen's compensation case, the employer and his insurance carrier have appealed from a judgment entered on an award of compensation in favor of the widow and children of Elmer Castor, who died while performing work for his employer.

Castor was employed by the defendant, Frank J. Ruffing, as a plumber. On June 20, 1952 he was engaged in installing a hot water heater in the boiler room in the Regent Square School in Pittsburgh. It was a hot day, the temperature varying from 79 degrees at 4 a.m. to a maximum of 99 degrees at 2 p.m. The evidence with respect to the nature of Castor's work, the conditions under which he was performing it and his movements on the day of his death was given by James A. Bigger, custodian of the school. Bigger testified that in installing the heater Castor was using a heavy ball pin hammer "to punch holes in concrete" and that he was "having difficulty . . . putting holes in the concrete". He testified further that the only ventilation in the boiler room was through a small door and that there was "no circulation of air at any time down there". Bigger saw Castor for the first time that day at 8 a.m., at which time there was nothing unusual about Castor's appearance. He next saw the deceased about 10 or 10:30 a.m., at which time the latter was at work in the boiler room and "he was sweating and you could tell he was overheated". Between 3:30 and 3:50 p.m. Bigger went down to the boiler room, found Castor lying on the floor and called for a police ambulance, which took Castor to the hospital where he was pronounced dead. Between 3 and 4 p.m. the temperature was 97 degrees.

The appellants, conceding arguendo that Castor died from heat exhaustion,[1] contend that "where the only accident alleged is the pathological result from exposure to heat and where the exposure during the course of his employment was less than he would otherwise have been exposed to had he not been so employed" decedent's death is not compensable. This argument is based upon defendant's assumption that the evidence indicates that "decedent was working in a cool spot which was cooler than the rest of the building and cooler than outside". This assumption is based upon certain testimony given by Bigger on cross-examination to the effect that it was warmer outside the building than it was in the boiler room. Bigger, however, was cutting grass on the day in question and his statement can be taken to mean only that the boiler room seemed comparatively cooler to a man who had been working in the sun. A complete answer to this contention of the appellants lies in the well-established principle that the compensation authorities having found in favor of the claimant, the evidence is to be read in the light most favorable to her (*Hockenberry v. State Workmen's Insurance Fund*, 133 Pa. Superior Ct. 249, 2 A. 2d 536), and she is to be given the benefit of all inferences reasonably deducible therefrom. *Schubert v. Oswald & Hess Co.*, 161 Pa. Superior Ct. 309, 54 A. 2d 113.

Though not as extreme, Castor's working conditions were similar to those of the claimant in *Toland v. Murphy Brothers*, 172 Pa. Superior Ct. 484, 94 A. 2d 156. In that case the claimant suffered a heat stroke while painting a small toilet room in which there was "little

_____

[1] For a partial collection of cases in which injuries sustained from sunstroke or heat prostration were held compensable see *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 9 A. 2d 742, at page 459.

or no circulation of air". There was medical testimony—which this Court deemed it important to quote, at page 487—to the effect that "it is generally accepted that if it is hot and humid and no circulation of air that there is more of a tendency toward these heat conditions than there is if the temperature, let us say, is higher and you are outside and there is a little wind blowing". Here we have an employe performing difficult work in a room which the compensation authorities could have concluded was "hot and humid and [with] no circulation of air", conditions conducive to heat exhaustion.

The compensation authorities found that the death of Castor "was brought about by heat exhaustion suffered while in the course of his employment with the defendant". This finding was supported by the death certificate and by the testimony of Castor's family physician, Dr. Kissell. The appellants contend that neither the death certificate nor the testimony of the doctor was competent evidence and that, therefore, the finding of the compensation authorities was not based upon sufficient competent evidence. That is the real question in this case.

Section 21 of the Act of June 7, 1915, P. L. 900, as amended, 35 PS sec. 471, provides that certified copies of death certificates shall be prima facie evidence of the facts therein stated. *Com. v. Goldsmith*, 176 Pa. Superior Ct. 283, 106 A. 2d 649.

In *Griffin v. National Mining Co.*, 127 Pa. Superior Ct. 588, 193 A. 447, we held that a death certificate signed by a deputy coroner was admissible to show the *cause* as well as the *fact* of death. The certificates are, we stated at page 593, "at best . . . only prima facie evidence of any fact therein stated and are open to explanation and contradiction by an opposing party." In the case at bar, after claimant had completed her case

defendant requested and was granted a continuance to provide "an opportunity to produce a medical witness to get an opinion". However, he chose to rest without presenting any such evidence.

*Johnson v. Valvoline Oil Co.,* 131 Pa. Superior Ct. 266, 200 A. 224, and *Heffron v. Prudential Insurance Co.,* 137 Pa. Superior Ct. 69, 8 A. 2d 491, cited by appellants, do not overrule or qualify the *Griffin* case. In the *Johnson* case we recognized the holding of the *Griffin* case but stated at pages 271-272: "Where, as in the instant case, the physician who made the certificate is a witness for the party offering it, and his testimony as to the cause of death is inadmissible for the reasons above set forth [The doctor, coroner of Butler County, based his opinion upon facts elicited by his investigation and inquiry and not upon evidence in the record of the compensation proceeding.], the evidential value accorded by the statute is destroyed." The *Heffron* case was an action on policies of life insurance and it was defendant's contention that the insured committed suicide. The *cause* of death was drowning. Plaintiff introduced the death certificate to show the *manner* of death but we held that the death certificate was not admissible to show that the insured met death by accidental drowning. Here the death certificate was offered and admitted to show the cause of death only and, consequently, it was properly received in evidence.

Dr. Kissell testified that Castor had rheumatic heart disease as the result of one or two attacks of rheumatic fever in childhood and that he had a systolic murmur due to damage to the mitral valve but that the "prognosis as to Castor's life expectancy was good, there being no evidence of congestive heart failure".

After this testimony counsel for claimant asked the following hypothetical question: ". . . based on your

examination of Elmer Castor noted on March 17th [1952], and the previous examination and in the light of all the testimony, the facts you've heard here, do you feel qualified, Doctor, to state your professional opinion as to the cause of death?" In answer to this question the witness stated, "I believe death was due to heat exhaustion." Counsel for the defendant interposed this objection: "I think the doctor is incompetent to testify as to the cause of death in this case not having seen the decedent at all about the time of his death, and in fact, not having seen him for about three months prior to the date of his death. I don't believe the doctor is qualified to give his opinion as to the cause of this man's death." The objection was overruled and the testimony admitted.

Appellants now contend that the objection should have been sustained because of the *form* of the question, stating, "we . . . do not know what facts his opinion was based on", that the opinion "may be and probably was based on a number of facts not in the record", and that the doctor failed to consider "the fact decedent was working in a relatively cool place". In our opinion the defendant had the duty to raise those questions at the hearing, at which time the claimant would have had an opportunity to remedy the hypothetical question *if* it was defective. Appellants cannot now raise that objection. In *Derrick v. Harwood Electric Co.*, 268 Pa. 136, 111 A. 48, at page 142, the Supreme Court stated: "There was no objection made to the hypothetical question plaintiffs propounded to their expert, hence his answer thereto should not have been disregarded by the trial court on the ground that the question omitted some essential features. Such course was not fair to plaintiff; for, had an objection been made, the question might have been reformed accordingly, or the defects supplied by other evidence."

Here the defendant, having objected only to the competency of the doctor to testify, is in the same position as if he had made no objection to the form of the hypothetical question.

Appellants' final argument is that the testimony of Dr. Kissell is inadmissible in that it amounts to a "mere guess or conjecture" and in support of this contention cite *Sweeney v. Blue Anchor Beverage Co.*, 325 Pa. 216, 189 A. 331, and *Marks v. Lumbermen's Insurance Co.*, 160 Pa. Superior Ct. 66, 49 A. 2d 855. In the *Sweeney* case a teacher of biological sciences was not permitted to give an opinion as to the cause of the breaking of a bottle of ginger ale. The Supreme Court held this proper because "the witness was no better qualified than was the tribunal itself to draw an inference as to the cause of the breaking of the bottle". In the *Marks* case the trial court refused to permit an expert to give his opinion as to whether it was possible for a wind of a certain velocity to blow a house from its foundation. We upheld the ruling of the court below, stating: "It is a matter of common knowledge that the damage done by hurricanes is unpredictable. Consequently, an opinion whether a hurricane would or would not do anything certain would be pure guesswork." It is, of course, perfectly obvious that these cases are of no help in deciding whether Dr. Kissell was competent to express an opinion with respect to the cause of Castor's death.

Dr. Kissell had been Castor's family physician for several years prior to his death and was thus in a position to know the state of decedent's health. His opinion was based upon all of claimant's evidence, which evidence established that decedent was performing hard physical labor on a hot day in a boiler room where there was little or no ventilation. The opinion of the doctor was clearly admissible. Cf. *Heinold v.*

*Pittsburgh Brass Mfg. Co.,* 149 Pa. Superior Ct. 409, 27 A. 2d 267.

Judgment affirmed.