## Davis *v.* Welsbach Corporation et al., Appellants.

Argued June 12, 1963. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*David L. Pennington,* with him *Joseph R. Thompson,* for appellants.

*Howard M. Girsh,* with him *Manuel Steinberg,* for appellees.

Opinion by Ervin, J., September 12, 1963:

Lonnie J. Davis, thirty years of age and single, started to work for the Welsbach Corporation as a "shakeout" man in the defendant's foundry on August 28, 1959. He was apparently in good health when he came to work that morning and he continued to be perfectly normal until the afternoon of that day. When he was hired he was sent to a doctor and after the doctor certified as to his good health, he was put to work. Decedent's brother testified that on August 27, the day before he started work, his brother was in good health. During the afternoon he became ill. One of his co-workers testified that at noon he appeared all right and about 3:30 he looked like he was sick, "like maybe the heat had him"; that about an hour later he started picking up things and throwing them at people. Another co-worker testified that around three o'clock "He seemed afraid of everybody. He jumped from side to side if somebody walked close to him. . . . But he seemed completely off balance. . . . He just seemed to be gone out of his head." He was brought to the accident dispensary around 4:40 p.m. "Upon arrival, he was convulsing. Blood pressure unobtainable. Pulse 180. Respirations 38. Skin very hot and dry. Rectal temperature 109."

Decedent was performing his labor in the foundry, where the temperature varied between 85 and 90°.

Dr. Leonard Girsh, a specialist in internal medicine, whose testimony was based upon an examination of the hospital records, testified that in his opinion Davis had a heat stroke and secondary features, that the heat stroke was the primary cause of his death, which occurred on September 1, 1959. The doctor based his opinion on the four following things: 1. Tem-

perature of 109° rectally; 2. Central nervous system symptoms of confusion and delirium, convulsions; 3. Skin very hot and dry; 4. This condition developed on a very hot day with excessive exposure to heat.

The only testimony presented was by the claimants. The claimants were Marion A. Davis and Emma Davis, parents of Lonnie J. Davis. They lived in Detroit, Michigan, and their son lived in the Philadelphia district. The son had not visited them for two years prior to his death. Prior to taking the job with the Welsbach Corporation, Lonnie J. Davis had operated a shoe shine stand and had part time work on the river front. The father, Marion A. Davis, was regularly employed by the Ford Motor Company and had been so employed for the past 15 years. He earned 2.55½ per hour and grossed $4,050.00 for the year 1959. He testified that the decedent had sent him $40.00 during the year 1959. Emma Davis, the mother, testified that her husband supported and maintained her but that she suffered from diabetes and required additional amounts for drugs and medical attention and that the decedent regularly sent her from ten to twenty dollars per month, which she used for this purpose.

The referee awarded compensation to the parents and found that they were partially dependent upon their son. The board reversed the referee and found that the death of the deceased was due to natural causes unrelated to his employment with the defendant and that the claimants were not dependent upon him for their support. The court below remanded the case to the board for the taking of further testimony on the issue of partial dependency of Emma Davis, the mother. The employer, Welsbach Corporation, and its intervening insurance carrier then took this appeal.

We are convinced that there was an accident within the meaning of the Workmen's Compensation Law and that the board capriciously disregarded the com-

petent and only evidence in the case as to the cause of decedent's death. Without going into detail, suffice it to say that the record in this case clearly shows that when the decedent came to work on the morning of August 28, 1959 he was in good health and that later on that day he suffered a heat stroke while engaged in his work at the defendant's foundry. The record fully substantiates the opinion of Dr. Girsh in this connection. There is no contrary evidence. In a long line of cases both our Court and the Supreme Court have held that heat prostration may constitute a compensable accident if the circumstances indicate that the death resulted from it during the course of the employment: *Lane v. Horn & Hardart Baking Co.*, 261 Pa. 329, 104 A. 615; *Matis v. Schaeffer*, 270 Pa. 141, 113 A. 64; *Clemens v. Cornish*, 295 Pa. 73, 144 A. 821; *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 459, 9 A. 2d 742; *Clancy v. Booth & Flinn Co.*, 109 Pa. Superior Ct. 452, 167 A. 393; *Consentino v. Union Paving Co.*, 113 Pa. Superior Ct. 295, 173 A. 470; *Trovato v. W. J. McCahan Sugar Refining Co.*, 122 Pa. Superior Ct. 499, 186 A. 163; *Russell v. Scott Paper Co.*, 140 Pa. Superior Ct. 84, 87, 13 A. 2d 81; *Toland v. Murphy Brothers*, 172 Pa. Superior Ct. 484, 94 A. 2d 156; *Castor v. Ruffing*, 178 Pa. Superior Ct. 124, 127, 112 A. 2d 412; *Grentz v. Danny's Restaurant*, 187 Pa. Superior Ct. 625, 628, 145 A. 2d 883.

Heat stroke or heat prostration is defined in Skinner's Pa. Workmen's Compensation Law, 4th ed., Vol. 1, page 288, as follows: "A heatstroke or heat prostration is an untoward, unexpected mishap and accidental injury and it is immaterial whether it is produced by artificial heat or by natural heat of the sun, directly or through the heated atmosphere, if the exhaustion comes in the course of employment."

We are therefore of the opinion that the board was in error in its finding that there was no compensable accident in this case.

We do, however, agree with the board's finding that the claimants failed to meet the burden of proof on the partial dependency issue. There was no direct testimony in the claimants' case as to the cost of the support of the parents. The father's wages of $4,050.00 a year were shown. It was also shown that the father had regular employment for a period of 15 years and that the parents lived together in Detroit and that the father supported his wife as well as himself. The income tax returns of the father and son were sought by the other side but they were never produced. Had they been produced they might have shed some light upon the son's earnings and they might have shown that the father claimed his wife as a dependent.

Where parents are claiming compensation under the Workmen's Compensation Act for the death of an adult son, the burden of proof is on them to affirmatively show the fact of their dependency. We have recently covered this question in an opinion written by Judge WRIGHT for this Court in the case of *DiCampli v. General Electric Co.*, 193 Pa. Superior Ct. 427, 165 A. 2d 255, a case very similar in its facts to the present one. In that case we reversed the board's allowance of partial dependency to the parents.

Dependency is not affirmatively established by mere proof of the receipt of contributions: *Icenhour v. Freedom Oil Works Co.*, 145 Pa. Superior Ct. 168, 20 A. 2d 817.

It is preposterous to conclude that a contribution of from $120.00 to $240.00 a year by a son could be found to be the basis for a conclusion that the parents, with their own income of over $4,000.00 a year, were partially dependent upon the son.

The claimants had every opportunity to prove a partial dependency but they failed to do so and we do not believe that a remand of the case to the board would serve any useful purpose at this time. This case pre-

sents a purely factual issue on the question of partial dependency and this question was resolved against the claimants by the board. The findings of the board on this question are supported by competent and substantial evidence sufficient to justify the findings and are binding upon the Court of Common Pleas, and under the circumstances it was without authority to remit the record for further findings: *Rozauski v. Glen Alden Coal Co.*, 165 Pa. Superior Ct. 460, 464, 69 A. 2d 192.

Judgment is reversed and is here entered for the defendants.

---

DISSENTING OPINION BY WATKINS, J.:

I would quash the appeal as being interlocutory. Although in agreement with the majority that the court below properly decided the question of law as to an accident by holding that the Board had capriciously disregarded the competent evidence of an accident and misapplied the law to those facts, it is impossible to determine the fact of dependency in the present state of the record, without the taking of additional testimony as contemplated by the order of the court below.

Section 307 of the statute provides, inter alia: "5. If there be neither widow, widower nor children entitled to compensation, then to the father or mother, *if dependent to any extent upon the employe at the time of the accident . . . .*" (Italics writers)

How is it possible to determine dependency "to any extent" without going into the cost of the support of the parents? We agree that the evidence of contributions is not enough, of itself, but in this case there was evidence that the contributions made by the deceased son were necessary for the parents' medical and drug bills. In *DiCampli v. General Electric Co.*, 193

Pa. Superior Ct. 427, 165 A. 2d 255, cited in the majority opinion, where this Court reversed the Board's allowance of partial dependency there was clear testimony of the cost of the household expenses which were less than two-thirds of the take-home pay of the husband, all of which he contributed to the support of his wife and family. This record is silent concerning the household expenses of this family.

I agree that dependency is not affirmatively established by mere proof of receipt of contributions. *Icenhour v. Freedom Oil Works Co.*, 145 Pa. Superior Ct. 168, 20 A. 2d 817, cited in the majority opinion, so held but in that case the husband was the decedent and the dependency involved was that of an estranged widow and this Court felt that the compensation authorities were confused between dependency and support, but again there was evidence of the household expenses of the wife. The *Icenhour* case first came before the Superior Court in 136 Pa. Superior Ct. 318, and this Court returned the record for remittal to the Board for further consideration concerning dependency and it was only after this further consideration and additional findings and after a second argument before this Court that the matter was concluded by *Icenhour v. Freedom Oil Works Co.*, 145 Pa. Superior Ct. 168, 20 A. 2d 817.

The gist of this case is whether the parents are "dependent to any extent" upon the $20 monthly contribution of the decedent and it is impossible to determine this without the testimony as to the household expenses. The appeal should be quashed as interlocutory so that the remand order of the court below for the taking of further testimony in regard to the issue of partial dependency may be carried out.

MONTGOMERY and FLOOD, JJ., join in this dissenting opinion.