Barton, Appellant, v. Pittsburgh Coal Co.

Argued April 16, 1934.

Before Trexler, P. J., Keller, Stadtfeld, Parker and James, JJ.

*August L. W. Sismondo,* for appellant.

*Daniel H. Gibson,* and with him *Rose & Eichenauer,* for appellee.

Opinion by Stadtfeld, J., July 13, 1934:

This is a workmen's compensation case. The referee made an award in favor of claimant; the board

reversed the findings of the referee and substituted its own findings of fact and conclusion of law and disallowed compensation. The court below on appeal overruled exceptions and dismissed the appeal, in an opinion by HUGHES, J. After taking the appeal, before action thereon by the lower court, claimant presented his petition to the board for a rehearing, setting up after discovered evidence in support thereof. The board refused a rehearing and an appeal was taken from the refusal of the same. The court affirmed the order of the board in refusing a rehearing. From the dismissal of the appeal in each instance, appeals were taken to this court.

The claim for compensation by Harry Barton is for injuries alleged to have been sustained by him, during the course of his employment, on September 20, 1929, at which time he was employed at the Crescent mine of the Pittsburgh Coal Company, as a "snapper."

The board made, inter alia, the following findings of fact: "4. On October 20, 1929, the claimant suffered a paralytic stroke of the right side caused by a hemorrhage from a gumma or syphilitic condition in the brain, a condition of syphilitic infection of the interior of the blood vessels known as syphilitic endarteritis. As the result of this stroke the claimant is totally disabled and will probably remain so.

"5. On October 20, 1929, and for a considerable time prior thereto, the claimant was suffering from a syphilitic condition of the brain or infection of the interior of the blood vessels known as syphilitic endarteritis.

"6. On September 20, 1929, the claimant sustained an accident in defendant's mine which he alleges materially accelerated this prior syphilitic ailment. He testifies that he was entering defendant's mine on the morning of September 20, 1929, on the man trip. The motorman, Stanley Barron, testifies: 'No, it wasn't

man trip. Man trip was next time when he got his foot hurt,' and states that they were hauling empties in for diggers, that the man trip was gone. We find as a fact that the claimant erred in his testimony, and that he met with an accident while hauling empty cars. The claimant alleges that on this occasion he got 'Bumped on the head' when his head came in contact with the roof. His witness, the motorman aforesaid, testifies, 'Maybe bump a little' and that the roof brushed the cap and lamp off claimant's head, that the lamp wasn't broke, and that they were going slow. From this evidence we find as a fact that the claimant's head brushed against the roof, causing his cap and lamp to fall off, but that he received no tangible bump or bruise or contusion of the head. Claimant's witness, Emil Fauvie, testifies that he observed 'little bit of blood' on claimant's forehead during the afternoon. The motorman testifies, 'I no see no blood,' 'he no have cut,' and reconciling this testimony, together with that of claimant's wife, who testifies that she 'saw the blood on the side of his face' when he returned home, we find as a fact that the brushing received by the claimant did not cause any cut or abrasion and that no blood appeared at the site of the alleged injury, in fact, that the claimant received no injury as the result of the incident.

"8. On October 7, 1929, the claimant was attended by Dr. W. J. Farquahar, at which time the claimant was complaining of dizziness. The doctor received no history of any accident such as here alleged and found no evidences of any injury to the head of the claimant. He did find, however, that the claimant was suffering from 'a glandular enlargement. The auxiliary gland, the cervical and some enlargement of the inguinal gland,' and we find that the dizziness of the claimant was caused by these glandular ailments together with

the syphilitic ailment from which he was suffering, in no way aggravated and accelerated by trauma.

\*   \*   \*   \*   \*   \*   \*   \*

"10. Reconciling the medical evidence in the case, we find that the accident sustained by the claimant on September 20, 1929, did not in any way cause or aggravate or accelerate the syphilitic ailment from which the claimant was suffering. On the other hand, we find that the stroke suffered by the claimant occurred during the natural course of the disease of which he was afflicted."

Appellant contends that there was no legally competent evidence to sustain the finding of the board that claimant suffered no injury as a result of the accident on September 20, 1929, and that the syphilitic ailment from which he was suffering was not aggravated by trauma sustained in said accident.

If the findings of the board are based on legally competent evidence, they are conclusive on the lower court as well as on this court on appeal.

Claimant contends that all the material evidence establishes the fact that immediately after the accident he suffered severe headaches and dizziness, which continued up to the time he became paralyzed, and that his paralysis was caused by the injury to his head aggravating his pre-existing syphilitic conditon.

Stanley Barron, the motorman who was working with claimant at the time he alleges he was injured, testified that after the alleged accident he stopped the motor and looked at claimant's head. "Q. You mean he bumped the roof? A. Maybe bump a little. In the front of the motor you have to look, in the front. Maybe a little bit like you bend down, so the snapper do that. Q. Did you see him bump his head on the roof? A. I see him. Q. What did it do to him? A. I stopped and looked around—maybe he got something. His lamp came down and the cap, too. It came down

and I looked around. Q. It knocked his cap and his lamp off? A. Yes, and I stopped and looked around. Q. When this happened was the motor traveling or standing still? A. The motor go, when it happen. I don't know how many mile it go. It is hill. It go slow. After while before you get down you go slow. It is hill there. Q. And you stopped the motor? A. I stop and look around. Think maybe he get cut or something. I looked at his head. He no have cut.''

The testimony further indicates that claimant was not incapacitated following the alleged accident as he worked for a period of some three weeks thereafter when he suffered an injury to his toes on October 16, 1929. While claimant's testimony is to the effect that he did report the accident of September 20, 1929, this was denied by all the witnesses to whom he claimed to have made the report. Dr. Farquahar, a witness called by defendant, testified that he examined claimant on October 7, 1929; he complained of dizziness but did not give any history or any cause for it; the doctor, at this time, thought it was only a gastric disturbance; that he examined his head at that time and tried to locate the cause for the dizziness, but found no evidence of injury; there were no lacerations or abrasion there. He also saw him on October 16th for the foot injury for which claimant gave a history at the time. On October 20, 1929, he found him suffering with acute apoplexy; his right side was paralyzed; he had a glandular enlargement, the auxiliary gland, the cervical and some enlargement of the inguinal gland; the Wasserman test was positive. The doctor's opinion was that the condition was caused by gumma of the brain. The doctor was positive that the alleged injury of September 20, 1929, was not the cause of the apoplexy.

Mrs. Barton, wife of claimant, testified that when her husband came home from work that day, she saw

blood on the side of his face; that he never complained of headache before that time.

X-ray pictures of claimant's skull showed an indentation on the inner table of the skull, but no exterior indication of any injury.

Dr. J. G. Lloyd, on behalf of claimant, testified that he first saw claimant in October, 1929, in company with Dr. H. W. Wuerthele; that the laboratory findings prove that he had syphilis of the nervous system; his last examination was December second or third, 1929; he found syphilitic endarteritis, a condition of syphilitic infection of the interior of the blood vessels, so weakening the walls that there is a possibility of rupture; that, in his opinion, trauma was an aggravating factor in this case; he could not state definitely that it was the aggravating factor such as to hurry the hemiplegia; that claimant could have had headaches and dizziness without ever having been hurt.

Dr. H. W. Wuerthele, called on behalf of claimant, testified that he first saw claimant on October 2, 1930; the examination revealed that there was a lesion in the left hemisphere of the brain; and examination of the skull indicated an indentation of the interior part of the skull on the right side; in his opinion there was a trauma to the area described, which cause an extravasation of blood into the meningies, duramater, arachnoid and the brain substance which caused an inflammatory change, which in turn caused a rupture of the blood vessel which in turn caused the hemiplegia; that it would be possible without any injury at all that this condition of the claimant would have come on, being a luetic patient; that he believed that the trauma of September 20th was the aggravating cause or inflammatory basis; that a hemiplegia could come without an injury as described.

Dr. F. A. Lorenz, called on behalf of claimant, testified that he examined claimant on the morning of the

day he was called as a witness; from the history obtained from the man, the examinations and findings of the laboratory by Doctor Lloyd, the x-ray plates and examination by Dr. Wuerthele, it was his professional opinion that claimant was suffering from a syphilitic endarteritis at the time he received the trauma to his head; that a physical examination showed that he has an indentation right over the region where his alleged injury occurred on September 20, 1929; that it was his opinion that the trauma, sustained September, 1929, was the aggravating factor in bringing about the hemorrhage in the brain; that in case of syphilitic endarteritis you may have hemiplegia come on without trauma.

Dr. H. L. Mitchell, called on behalf of defendant, testified that he examined claimant at the Marine Hospital on November 10, 1929, and at irregular intervals since; that the diagnosis was a cerebral hemorrhage deep in the substance of the brain, not a surface hemorrhage; that it had to be deep in the substance of the brain to produce the subjective disturbance which was so pronounced in claimant; that the Wasserman and spinal tests with spinal fluid examination definitely established the presence of cerebral spinal syphilis; that there was an x-ray taken on August 23, 1930, by the roentgenologist of the Marine Hospital, which was reported as being negative for fracture or any other evidence of pathology of the bones of the skull; that there was no physical evidence of an injury at all; that syphilis of the brain or meningies is a very common cause of headaches and produces one of the most excruciating types of headaches; that this hemorrhage deep in the brain could and very frequently does occur in a syphilitic condition without trauma; that in his professional opinion he did not believe that the trauma in this case acted as a precipitating factor.

We have gone into some detail in the testimony, in

order to show its conflicting character from which the board had to make its findings.

The credibility of the witness is for the compensation authorities. As stated by our Brother PARKER, in Pastelak v. Glen Alden Coal Company, 108 Pa. Superior Ct. 89, 164 A. 846: "All questions of fact and inferences of fact are for the compensation authorities." It is not the function of the court to weigh conflicting evidence nor decide what inference shall be drawn therefrom: Rodman v. Smedley, 276 Pa. 296, 120 A. 266; Slemba v. Hamilton & Sons, 290 Pa. 267, 138 A. 841.

The revisory powers of the courts are limited to the determination of the question whether there is competent evidence to support the findings and whether the law has been properly applied to them: Watson v. Lehigh Co. & N. Company, 273 Pa. 251, 116 A. 889; Hunter v. American Steel & Wire Company, 293 Pa. 103, 141 A. 635. In the words of Mr. Justice SIMPSON in Stahl v. Watson Coal Co. et al., 268 Pa. 452, 454, 112 A. 14: "If the vital point in dispute is claimed to have been established by direct proof, the question whether or not there is evidence to sustain it is one of law and may be reviewed; but, if such evidence appears, the finding becomes one of fact and is not subject to review, though the Referee and the Board might well have decided the point differently and the court would possibly have done so."

As stated in Seitzinger v. Fort Pitt Brewing Co., 294 Pa. 253, 258, 144 A. 79, ". . . . . . the burden of proof was upon the claimant, and, if the evidence to sustain that burden is not believed by the board, it may decline to grant an award thereon, or if, in the opinion of the board, such evidence is so indefinite and inconsistent that it can not be accepted as a basis for a finding which would sustain an award, no compensation need be given."

The board has found as a fact that the claimant received no injury as a result of the accident, and there is legally competent evidence to support this view. This finding is binding both on the lower court and on this court on appeal: Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 133 A. 256. The board acted within its authority in making a new finding of fact on appeal from the referee: Vonot v. Hudson Coal Co., 285 Pa. 385, 132 A. 347; Vorbnoff v. Mesta Machine Co., supra.

The lower court did not err in affirming the findings of the board and entering judgment in favor of defendant.

The assignments of error on the appeal from this judgment are therefore overruled and judgment affirmed.

Claimant has also appealed from the order of the lower court affirming the action of the board in refusing claimant a rehearing.

Under the Workmen's Compensation Act the granting of a rehearing is a discretionary matter with the board unless there has been an abuse of discretion.

The sole reason in support of the petition was to produce the evidence of a physician, who had not been called at any of the previous hearings who would testify to alleged declarations made by claimant on September 26, 1929, as to the happening of the accident and his condition. The evidence proposed to be offered would only have been cumulative, and could not, in any way, have affected the essential features on which the findings were based. We do not believe that there was any abuse of discretion in refusing the petition.

The assignment of error is therefore overruled and the order of the lower court affirmed.