## Russell v. Scott Paper Company (et al., Appellant).

Argued March 19, 1940.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*John Paul Erwin,* with him *James J. Leyden,* for
appellant.

*Frank R. Ambler,* for appellee.

OPINION BY STADTFELD, J., May 1, 1940:

This is a Workmen's Compensation case. Claimant
seeks compensation for the death of her husband, Wil-
liam F. Russell, from heat stroke sustained in the course
of his employment with defendant.

William F. Russell was employed by defendant as a
consumer's representative and he was required to in-
spect all paper in the various stages of its manufacture
throughout the mill. This work necessitated a lot of
walking and close approach to the paper machines and
conveyers, which are steam heated and maintain a high
temperature.

On July 10, 1937, William F. Russell, forty-one years
of age, in good health, ate his breakfast and left his
home in Philadelphia for work at Chester, Pennsyl-
vania, via bus and train. He reported at the mill for
work at 8:00 a. m. and at that time appeared to B. S.

Garrett, a fellow employee, "to be his normal self"; John F. Hagar, another employee, talked to Russell between 8:00 and 9:30 a. m. at different places in the mill and he appeared his normal self; C. E. Snedaker saw him at 8:00 a. m. and said Russell looked "normal as he usually was"; he saw him a couple of times between 8:00 and 8:30 a. m. at different places in the mill and at 11:00 a. m. found him lying down in the locker room "pale, like a sick person would look," where he had probably been unconscious from the last time he was seen around 9:30 a. m. Russell stated he was going from one room to another at the place he worked and all of a sudden he experienced such a sensation around his body that he knew nothing until he was picked up. He was given first aid and taken to the company's doctor, Dr. Nyemetz, who made a diagnosis of heat stroke, saying Russell had a terrific headache, a temperature of 103 with a dry skin, which, with the high temperature, indicated a severe heat stroke.

The company physician sent Russell home, fifteen miles distant, in an automobile and he was immediately put to bed. There he remained until his death on July 15, 1937. Upon Russell's arrival home, his family physician, Dr. Flanagan, was called and was in attendance until Russell's death five days later. He, too, made a diagnosis of heat stroke, resulting in lobar pneumonia and death.

Claimant, decedent's wife, testified that her husband was in fine health, cut grass and played ball the preceding night, had a shower and evening snack and never looked or felt better; that when they brought him home at noon he was helpless and was never able to use his limbs.

Upon this testimony the referee found "that on July 10, 1937, William F. Russell, the decedent, while working in the employ of the defendant and on the premises of the defendant sustained a heat stroke as a result of which he was immediately totally disabled and which

caused his death on July 15, 1937" and awarded compensation.

Defendant appealed to the board on the ground that death was due to pneumonia, which affirmed the findings of fact, conclusions of law and award of the referee, and dismissed the appeal. Defendant then took an appeal to Common Pleas Court No. 2, where again the appeal was dismissed and judgment entered in favor of the claimant and against the defendant. This appeal followed.

The only question raised is whether there is evidence to support the findings of the compensation authorities that decedent sustained a heat stroke which resulted in his death.

Heat stroke or heat prostration is defined in Skinner's Pennsylvania Workmen's Compensation Law, (Third Edition, Vol. 1, p. 291) as follows: "A heat stroke or heat prostration is an untoward, unexpected mishap and accidental injury and it is immaterial whether it is produced by artificial heat or by natural heat of the sun, directly or through the heated atmosphere, if the exhaustion comes in the course of employment."

Under the Workmen's Compensation Law of June 2, 1915, P. L. 736, it has been held by the Supreme Court and by our Court, that a heat stroke is an accident and compensable: *Lane v. Horn & Hardart Baking Co.*, 261 Pa. 329, 104 A. 615; *Clemens v. Cornish*, 295 Pa. 73, 144 A. 821.

In *Trovato v. W. J. McCahan Sugar Refining Co.*, 122 Pa. Superior Ct. 499, 186 A. 163, Judge CUNNINGHAM said, in the opinion at p. 506: "Here, there is uncontradicted evidence that Trovato was actively engaged in the performance of his duties when stricken. It is, of course, impossible to determine with absolute certainty whether the heat stroke occurred 'wholly' through exposure to the heat present in the boiler room, but, in the absence of any evidence that decedent had been

noticeably affected in any way by the outside temperature, we cannot say it is unreasonable to conclude that the exposure during the course of his employment was not only a marked contributory factor toward, but in all probability the direct cause of, the stroke."

Quoting from the opinion by Mr. Justice Stern in *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 459, 9 A. 2d 742, 744: ". . . . . . These (cases cited in the "second group") rest upon the theory that the prostration is not the natural, probable and predictable result of an exposure to the prevailing conditions, but constitutes an extraordinary and unlooked-for mishap visited suddenly upon the employe while at work."

In the instant case it is not disputed that decedent was actively engaged in his regular work on defendant's premises when the onset and disability occurred.

Claimant alleges that her husband sustained a heat stroke on July 10, 1937, resulting in his death five days later.

Defendant contends that decedent did not have a heat stroke but was stricken with lobar pneumonia. Dr. Nyemetz, defendant's physician, who examined him and made a diagnosis of severe heat stroke, testified as follows: "Q. From your examination at the time your diagnosis was heat stroke? A. At that time it was, yes, sir. . . . . . . Q. Doctor, if you recall, can you tell us whether Mr. Russell's skin was perspiring or whether it was dry? A. It was dry. (By the referee) : Q. What does that indicate? A. In severe heat stroke you usually find a dry skin with the high temperature, as against heat exhaustion where it is just the opposite."

Dr. Flanagan, the family physician, saw decedent around noon of the day he was stricken and testified as follows: "Q. What was his condition? A. His condition,—I thoroughly agreed that he suffered a heat stroke at work, and he was brought home from work. Q. You mean the symptoms he had at that time denoted heat-stroke? A. I do, sir; he had heat stroke. Q. For how

long? A. Until he died. Q. What did he die of? A. Lobar pneumonia of the left lung. Q. Due to what? A. Due to the results of the heat stroke. Q. When did he die? A. Thursday morning, July 15, about 6:00 A. M."

The opinion of these attending physicians is competent evidence and supports the finding of the compensation authorities regardless of the fact that defendant produced several expert medical physicians who never saw the decedent but expressed the opinion that he died from lobar pneumonia unrelated to heat stroke.

Dr. Nyemetz also testified along this line, as follows: "By the referee: Q. A man with a heat stroke the terminal of life could be pneumonia, could it not? A. Yes, sir, pneumonia from a heat stroke."

Dr. Basil R. Beltran, one of the defendant's medical experts, testified: "Q. Would lobar pneumonia follow heat stroke? A. Yes."

Decedent, according to the testimony, had every symptom of heat stroke. At the time he was working, according to the "Monthly Meteorological Summary" of the U. S. Weather Bureau, for the month of July 1937, the temperature at 7:30 a. m. on July 10th was 83°, rising to 94° at noon. It is a well recognized fact that heat stroke can only result from excessive heat upon the body.

The findings of a referee which are approved by the Workmen's Compensation Board and supported by competent evidence, are as conclusive upon the courts as the verdict of a jury. The compensation authorities are vested with the power to find facts whether based upon direct or circumstantial evidence and the inferences to be drawn therefrom. These findings cannot be disturbed on an appeal even though this court might be of the opinion that the weight of the evidence as a whole is against such findings: *Johnson v. Valvoline Oil Co.*, 131 Pa. Superior Ct. 266, 200 A. 224, and the credibility of the witness is for the compensation author-

ities: *Barton v. Pittsburgh Coal Co.,* 113 Pa. Superior Ct. 454, 173 A. 678.

Defendant produced two medical experts, who never saw or examined claimant, but testified solely in answer to hypothetical questions. Aside from the fact that the testimony of attending physicians is preferred to that of experts, our courts have held that any conflict of medical testimony is to be resolved by the compensation authorities.

In *Puzio v. Susquehanna Collieries Co.,* 126 Pa. Superior Ct. 488, 191 A. 222, this court, speaking through Judge RHODES, said, at pp. 491, 492: "The opinions of the medical experts were conflicting. It is the function of the compensation authorities to determine which shall be adopted and in whom credence shall be placed. The credibility and weight of testimony of one who qualifies as an expert is not reviewable as a matter of law. See *Barton v. Pittsburgh Coal Co.,* 113 Pa. Superior Ct. 454, 173 A. 678. The duty of this court is to determine whether the record contains any competent evidence upon which the fact-finding body can base its findings, and whether the law has been properly applied to them. All the medical testimony was competent and afforded a basis for a finding of fact either way ......".

In the instant case, decedent was forty-one years of age and in perfect health, as shown by his physical activities up to the time of the attack and also by the autopsy, which showed him to be in perfect physical condition. He was working in a very high temperature, and the diagnosis of heat stroke, according to the diagnosis of the two attending physicians, accepted by the compensation authorities, is conclusive upon this court. The cases relied upon by appellant are readily distinguishable from the instant case.

The assignments of error are overruled and judgment **affirmed.**