## Hosterman, Appellant, *v.* Best.

Argued December 11, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Wm. W. Litke,* with him *Fleming & Litke,* for appellant.

*Robert C. Haberstroh,* with him *R. Paul Campbell,* for defendants, appellees.

*S. H. Torchia, Ralph H. Behney* and *James H. Duff,* Attorney General, for State Workmen's Insurance Fund, appellee.

OPINION BY RHODES, J., March 4, 1946:

This is a workmen's compensation case under the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, No. 284, 77 PS § 1201 et seq. The claim was for compensation for total disability alleged to be the result of lead poisoning. Act of June 21, 1939, P. L. 566, § 108 (a), 77 PS § 1208 (a). Claimant has appealed from the disallowance of compensation.

Claimant had been employed by defendant for a period of two years as a painter, his last employment being on December 23, 1939. Prior to his employment by defendant, claimant had engaged in farming and highway construction; in 1937 he secured employment for

a period of about six months as a machinist. In 1938 he again worked for defendant, and his duties included scraping paint from buildings, painting buildings and paperhanging. On February 10, 1940, claimant became ill, and two weeks later he was removed to a hospital where he remained for five weeks. On July 19, 1940, he filed his claim petition.

When claimant became ill he was treated by Dr. Henry N. Thissell for severe headaches; and Dr. Thissell found that he was suffering from anuria. Claimant himself testified that he had been suffering from headaches since 1927, and had suffered from tonsillitis until 1927, when he had his tonsils removed. In 1927 he underwent an operation for hernia. Again in 1933 claimant entered the hospital because of severe headache and pains in the back. He was hospitalized on four different occasions, the first being on April 5, 1927, and the fourth being on January 18, 1933. During the period of these admissions claimant's chief complaint was that of pain in the back and headache. In 1933 his trouble was diagnosed as neurosis. He felt that his condition was due to a kidney ailment. Dr. Thissell gave no opinion as to the cause of claimant's disability, but Dr. Richard H. Hoffman testified that in his opinion claimant was suffering from metallic poisoning, which caused nephritis. He also testified that in his opinion claimant was totally disabled. Dr. A. S. Keck, a medical expert called on behalf of defendant, and a specialist in internal medicine, after giving claimant a thorough examination, testified that in his opinion claimant was suffering from chronic nephritis, and that symptoms of lead poisoning were not present. Furthermore, Dr. Keck testified that claimant's spinal pressure was low, while in cases of lead poisoning the spinal pressure is high; and that claimant's exposure was insufficient to bring on lead or metallic poisoning. Dr. E. H. Adams, called by defendant, after describing the examination he made of claimant, testified that in his opinion claimant was suffering from chronic nephritis, and "that he had some acute kidney change, which caused

a suppression of urine, an acute nephritis." Dr. Charles H. Fleck, a witness for defendant, likewise testified that in his opinion claimant was suffering from a chronic diffuse nephritis, and that in his opinion lead poisoning was not present. Upon the conclusion of this testimony, the referee made his findings of fact, conclusions of law, and order of disallowance of compensation. Claimant then appealed to the Workmen's Compensation Board, and while the appeal was pending he petitioned for a rehearing. A rehearing was allowed by the board, and the same was thereafter held before the referee. At the rehearing Dr. Hoffman testified that specimens of claimant's blood and spinal fluid had been sent to the Philadelphia General Hospital, and on the basis of these tests he again expressed his opinion to the effect that claimant was suffering from lead poisoning, and that the nephritis was due to such poisoning. One of the tests showed .03 milligrams of lead per 100 grams of blood, and .05 milligrams per 100 cc. of cerebral spinal fluid, and subsequent tests showed .05 milligrams per 100 grams of blood and .07 milligrams for 100 cc. of spinal fluid. Dr. John G. Reinhold, of the Philadelphia General Hospital, a biochemist called on behalf of claimant, under whose supervision the tests were made by Dr. Theodore Letonoff, stated that the amount of lead found in claimant's blood was within the normal range, and therefore proved nothing as to whether or not claimant was suffering from lead poisoning. The tests, he said, indicated a condition above normal in the spinal fluid. Dr. Reinhold also testified: "I would not want to claim or even infer with that proof that the man had lead poisoning." The board then affirmed the findings of fact and conclusions of law of the referee and dismissed claimant's appeal, making no new findings or conclusions. Claimant appealed to the court of common pleas, and the record was returned to the board for the purpose of having findings of fact made which would include the testimony which had been taken after the appeal was filed from the order of disallowance of the referee.

Thereupon the board filed its opinion in which it made clear that it had considered the entire record; it affirmed the referee's findings of fact, and in addition made a new finding to the effect that claimant's witnesses were of the opinion that claimant was suffering from lead poisoning. The board affirmed the second conclusion of law of the referee: "That since the claimant has failed to prove that his disability was the result of any occupational disease, the evidence showing it was due to other causes, he is not entitled to recover compensation." The board, in dismissing claimant's appeal, said: "There is in this case, as in many other cases, a clear conflict in the medical testimony as to the cause of claimant's disability. We are convinced that claimant's disability is not the result of lead poisoning, but due rather to the physical disabilities from which he is suffering. We have carefully covered the entire situation, including an analysis of the medical testimony in our former opinion filed on July 3, 1942, and therefore incorporate said opinion herein by reference." In its opinion of July 3, 1942, the board had said: "It is our opinion, after carefully considering all of the testimony presented at the original hearing, together with the findings made by Dr. Reinhold and his staff, that claimant has failed to prove, by adequate testimony, that his disability is the result of occupational disease sustained in the course of his employment."

The issue in this case is purely factual, and the burden was upon claimant to show by a preponderance of the evidence all the elements necessary to support an award. *Hurtuk v. H. C. Frick Coke Co.*, 157 Pa. Superior Ct. 317, 321, 43 A. 2d 559. Counsel for claimant recognizes the controlling principle, and very properly states the question involved as follows: "Are the findings of fact of the Workmen's Compensation Board consistent with each other and with its conclusions of law and its order, and can they be sustained without a capricious disregard of the competent evidence?" Notwithstanding claimant's exhaustive brief, we can find no

substantial basis upon which the question could be answered otherwise than in the affirmative. The medical testimony was exhaustive and there was a marked difference of opinion. The tests and the testimony of Drs. Reinhold and Letonoff, who made them, and the additional opinion of Dr. Hoffman did not necessarily require the board to ignore the testimony of defendant's medical experts who testified, after examination of claimant and on the facts enumerated by them, that claimant was not suffering from lead poisoning but from a chronic nephritis which became acute about February 10, 1940. Counsel for claimant argues that in order to sustain the findings of fact of the board, it is necessary to ignore completely all of the important facts which are developed by the tests and the testimony which followed. The weakness of claimant's position is that the tests were not conclusive of the facts which he sought to establish. It follows that the board did not abuse its power as the ultimate fact-finding body. The credibility and weight of testimony of the medical experts were for the board, and it cannot be said under the circumstances of this case that there was any capricious disregard by the board of the competent evidence. See *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 333, 24 A. 2d 51.

Claimant devotes a considerable portion of his argument to criticizing the findings of fact of the board, but none of the findings is made the basis of an assignment of error. Claimant has been content to assign as error only the order of the court below: "And now, October 17, A.D. 1944, the appeal is dismissed." See *Fitzgerald v. Atlas Asbestos Co. et al.,* 158 Pa. Superior Ct. 151, 153, 44 A. 2d 316. The board did not accept the theory of the claimant, and the findings of fact were made accordingly. It is not within our province to set aside the board's disposition of the factual issues, where the board's findings of fact, as here, are consistent with each other and with its conclusions of law and its order, and there was no capricious disregard of the competent evidence. See

*Hudek v. United Engineering and Foundry Co. et al.,*
152 Pa. Superior Ct. 493, 498, 33 A. 2d 41. In making
such findings the board considered all the testimony
which had been offered by the parties to this proceeding,
and it clearly appears that there was no such disregard
of the competent evidence. The judgment of the court
below in favor of defendant will be affirmed.

While the appeal from the board was pending in the
court of common pleas, claimant filed with the board a
petition for a third rehearing. In this petition he averred
that on February 15, 1944, Dr. LeRoy D. Locke advised
him, after examination, that he exhibited the classical
symptoms of lead poisoning. An answer was filed, and
the board refused to grant the rehearing. The court of
common pleas affirmed the board and dismissed claim-
ant's appeal. From this order of the court below claim-
ant has appealed to this court and assigns as error the
entry of the order.

Section 426 of the Act of June 2, 1915, P. L. 736, as
amended, 77 PS § 871, relates to the granting of rehear-
ings by the board, and provides as follows: "The board,
upon petition of any party and upon cause shown, at
any time before the court of common pleas of any county
of this Commonwealth other than Allegheny County,
and in Allegheny County before the county court of Alle-
gheny County, to which an appeal has been taken under
the provisions of section four hundred and twenty-seven
of this article shall have taken final action thereon, may
grant a rehearing of any petition upon which the board
has made an award or disallowance of compensation or
other order or ruling, or upon which the board has sus-
tained or reversed any action of a referee; but such re-
hearing shall not be granted more than one year after
the board has made such award, disallowance, or other
order or ruling, or has sustained or reversed any action
of the referee." The granting of a rehearing under this
section of the act is a matter of the board's discretion,
and its order is appealable only for an abuse thereof.

*Fronko v. United States Sanitary Mfg. Co. et al.,* 155 Pa. Superior Ct. 636, 642, 39 A. 2d 363.

The examination of claimant by Dr. Locke, as set forth in claimant's petition for rehearing, took place over four years after claimant became acutely ill. It appears that Dr. Locke's testimony would be to the effect that claimant was suffering from lead poisoning, and that he exhibited symptoms of foot drop and wrist drop, together with atrophy of leg and forearm muscles, wrist, and foot, which he would say were indicative of lead poisoning. The testimony of defendant's medical experts clearly indicates that they did not base their opinions or conclusions solely upon the absence of a wrist or foot drop. They considered claimant's condition as disclosed by examination and his prior medical history, including continuous headaches over a period of years, tonsillitis, kidney trouble, anuria, no lead line, no stippling of the blood cells, the specific gravity of claimant's urine, and claimant's spinal pressure. The testimony of Dr. Locke would be merely the additional opinion of another doctor that claimant is suffering from lead poisoning. It would be corroborative of that of Dr. Hoffman but at variance with the testimony of the medical experts of defendant who testified that claimant was suffering from chronic nephritis rather than from lead poisoning. It does not appear that this cumulative testimony would affect the board's disposition of this case. A rehearing is not to be allowed for the purpose of explaining or strengthening weak proofs which have already been presented or for the purpose of hearing additional testimony that is merely cumulative. *Fronko v. United States Sanitary Mfg. Co. et al.,* supra, 155 Pa. Superior Ct. 636, 643, 39 A. 2d 363. We agree with the court below that the board in refusing a further rehearing in this matter was not guilty of an abuse of discretion as it has been defined by our courts. The testimony which claimant would offer at the rehearing requested would have been cumulative only and would not require a revision or reversal of the board's findings of fact and

conclusions of law. See *Barton v. Pittsburgh Coal Co.,* 113 Pa. Superior Ct. 454, 463, 173 A. 678.

The order of the court below is affirmed, and the judgment in favor of defendant is affirmed.