## Garland v. American Viscose Corp.

512

*Horace J. Culbertson*, for claimant.

*Harry L. Siegel*, for defendant.

LEHMAN, P. J., October 16, 1956.—There are two questions involved in this workmen's compensation case, viz.: (1) Whether claimant established by legally competent evidence the causal connection between the accident and her disability; and (2) whether the workmen's compensation board abused its discretion by refusing claimant's request for a rehearing.

This case is now before us on two appeals, first, on appeal by defendant from the decision of the board which affirmed the award of the referee in claimant's favor and, second, on appeal by claimant from the board's refusal to grant her a rehearing.

The testimony upon which the referee found for claimant may be summarized as follows: On February 24, 1953, Anna Garland, age 53 years, while carrying an armload of bobbins in the course of her employment with defendant, slipped on the grease-covered floor and fell, striking her back on the floor with such force that it caused her to vomit. Claimant immediately reported the accident to the nurse in charge of the company dispensary, advising her that she had injured her back. Because there was no doctor on duty at the time, claimant testified she was advised that the doctor would summon her for an examination at a later date. Claimant received no treatment from the nurse and finished her shift that night. She never received a call from the company doctor for an examination and she continued working for some five and a half weeks until April 3, 1953, when she was forced to stop work because of the pain in her back. She visited Dr. George G. Dawe, who ultimately referred her to Dr. Ervin

Rodriguez, Chief of Orthopedics at the Lewistown Hospital.

Claimant testified that immediately following her fall, she felt a pain in her back and that from that time until April 3, 1953, her back pain grew progressively worse. She took anacin and aspirin and had her back rubbed with oil and liniment. She continually complained of back pain to her coworkers who, as a consequence of her complaint, gave her a helping hand with her work. She was corroborated in this testimony by her two coworkers. Claimant further testified that she did not seek medical attention during this period because she did not wish to lose any time from her work and had relied upon the home remedies above described.

Dr. Rodriguez testified that he first examined claimant on May 15, 1953, and found "a segmental restriction with muscle spasm on the right side of the lumbar area with pain to pressure," which he believed could have resulted from the accident in question.

Dr. Rodriguez further stated that at the time of his initial examination there was limitation in raising her right leg and decreased cutaneous sensation in that member as compared with the left leg. There was a positive Patrick's sign on the right. Dr. Rodriguez, in the absence of other history of a back injury, connected claimant's disability with the accident in question. He ruled out both congenital and arthritic conditions and was of the opinion that claimant had sustained either a bulging or a rupture of a disc. The doctor further testified that a person with such a disc can go for months as long as there is no stooping or heavy lifting and that a bulging of the disc may produce some pressure on the nerve and dura of the spinal cord and if the disc protrudes further, a sharp pain results. Dr. Rodriguez further stated that usually more than stooping is required to produce a bulging of the disc because

when a person stoops his muscles and ligaments are placed in a guarded position to allow the bending.

Claimant was hospitalized for approximately a week to 10 days and traction applied. She was discharged from the hospital after her condition had improved and instructed on the exercises commonly used for this type of case. Dr. Rodriguez continued to treat her following her discharge from the hospital. She returned to work for defendant on April 16, 1954, at a less remunerative job and one which embraced lighter work than she had previously performed. The referee found that claimant was totally disabled as a result of said accidental back injury from April 3, 1953, to August 28, 1953, on which latter date the disability was reduced to 50 percent partial and that on January 5, 1954, said partial disability was further reduced to 25 percent. At the time of argument of this case, counsel advised us that claimant has fully recovered and is presently employed by defendant.

Defendant admitted by its answer that claimant sustained an accident on or about February 24, 1953. Defendant contended that claimant's disability was not the result of said accident.

Dr. Leonard F. Bush, Chief Orthopedic Surgeon at the Geissinger Memorial Hospital, testified for defendant that claimant had some mild moderate lumbosacral pain when he examined her on October 26, 1953, and that in his opinion she could not have continued working following her fall of February 24, 1953, if she then had sustained a ruptured disc. Dr. Bush was of the opinion claimant was suffering from a mild moderate osteoarthritis of her lumbar spine and that this condition had no connection with the accident of February 24, 1953. Although Dr. Bush testified he was present and heard the testimony of claimant and her co-workers, his impression was that she had fallen on

her side.and not her back and had not complained of pain . . .

Defendant's appeal from the decision of the board excepts to certain findings of fact and conclusions of law as found by the referee.

Counsel for defendant contends that the medical testimony offered is insufficient to establish a causal connection between the accident of February 24, 1953, and claimant's disability. He quotes claimant's doctor in this regard as having testified in direct examination as follows: "Q. Dr. Rodriguez, based upon the history that she gave you and your findings do you believe that this came from the fall in the course of her employment? A. It could have from the history I have. I have nothing else to be able to say about it because that's the history as I have it; that's the only history of injury to her back at that time."

While Dr. Rodriguez testified to certain positive findings, ruled out both congenital and arthritic conditions as the cause of claimant's disability and was of the opinion that more than stooping had been required to produce the bulging or rupture of claimant's disc, he did not testify that in his professional opinion claimant's disability resulted from the accident of February 24, 1953. Admittedly, his answer that "it could have from the history I have" is not sufficiently definite to satisfy the requirements of those cases requiring medical testimony as to the causal relationship between accident and disability: Elonis v. Lytle Coal Company, 134 Pa. Superior Ct. 264, 3 A. 2d 995; Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 133 Atl. 256; Powell v. Risser, 375 Pa. 60, 99 A. 2d 454.

For the reasons hereinafter set forth it is unnecessary for us at this time to decide whether the injury in this case was the natural and probable result of the accident in question whereby medical testimony as to

the causal relationship of the accident and disability is not required or whether the case falls into the category of those cases requiring such medical testimony. Unequivocal medical testimony of a causal connection between accident and disability is required when there is a considerable lapse of time between accident and disability. But when there is a close connection between accident and injury so as to satisfy a reasonable mind as to the cause of the disability, medical testimony is not necessary to establish causation: Anthony v. Lee Coal Co., 168 Pa. Superior Ct. 397, 77 A. 2d 657. There was a period of but five and a half weeks from the date of the admitted accident until claimant became disabled to the point of having to stop work. According to claimant, she suffered back pains during all of this period which increased in severity until she was forced to suspend work. She attempted home cures and her coworkers helped her with her lifting and carrying. There is no evidence of an accident other than the alleged sweeper incident and that was emphatically denied by claimant, her husband and daughter and not accepted by the referee or the board.

Following the argument of defendant's appeal before us and prior to our disposition thereof claimant filed a petition for rehearing with the board in which she alleged that her medical witness, Dr. Ervin E. Rodriguez, is from Puerto Rico, and at the time of testifying was not familiar with Pennsylvania requirements as to standards of testimony and methods. Attached to her petition was an affidavit executed by Dr. Rodriguez averring: "It is my professional opinion that her disability was the direct result of the fall which occurred during the course of her employment." The affidavit of Dr. Rodriguez further avers that the case in question "was one of the first hearings if not the first in which I had testified under the Pennsylvania Workman's Compensation Law and I was unfamiliar with

the legal requirements. Since the doctor is never present when an accident occurs, it was my thought at the time I testified on February 8, 1954, that in all injuries of this type it could have happened from a given set of facts and that no doctor could be positive at any time as to the cause of disability such as Mrs. Garland had. I have since learned that I am entitled and expected to give my opinion based upon a given set of facts. I, therefore, if given an opportunity would supplement the previous testimony by stating that I think Mrs. Garland's disability came from the fall which she described in the history which she gave me at the time I first examined her.

"I give this statement for the reason that I believe the miscarriage of justice might be accomplished if it were decided that my testimony did not make it clear that I believe her disability was the result of the fall. I was being unnecessarily cautious and perhaps erroneously believed that no doctor should ever testify to something that he did not actually witness.

"I began my practice here in Lewistown approximately a year before this hearing."

Defendant filed an answer denying claimant's right to rehearing and contended that ample opportunity had been afforded her to present her case at the hearings of February 8, 1954, and June 15, 1954, and that no effort had been made to supplement this testimony until after the case had been argued before the court in spite of the fact this alleged inadequacy of testimony was argued before the board.

The board refused claimant's petition for rehearing on the ground that it would serve no useful purpose since the referee had made an award in her favor and the proposed additional testimony would not alter the board's decision nor justify further consideration of the case. Claimant's appeal from the board's refusal to grant her said rehearing is now before us.

Section 426 of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, as amended May 27, 1943, P. L. 691, 77 PS §871, provides that: "The board, upon petition of any party and upon cause shown, at any time before the court of common pleas of any county . . . to which an appeal has been taken under the provisions of section four hundred and twenty-seven of this article ·shall have taken final action thereon, may grant a rehearing of any petition upon which the board has made an award or disallowance of compensation or other order or ruling, or upon which the board has sustained or reversed any action of a referee; . . ."

In Greeby v. Phila. Asbestos Co., 120 Pa. Superior Ct. 9, 12, 181 Atl. 452, the court said: "One of the purposes of the workmen's compensation laws is to give a claimant full opportunity to present whatever competent evidence he desires to reach the merits of the case. In harmony with this liberal tendency, the courts have held that the board has broad powers to grant a rehearing when justice requires." See also Kocher v. Kocher, 300 Pa. 206, 150 Atl. 468; Conley v. Allegheny County, 124 Pa. Superior Ct. 303, 188 Atl. 385. In Repper v. Eichelberger & Company, 120 Pa. Superior Ct. 19, 181 Atl. 379, it was held that "utmost liberality as to such matters is extended to a claimant."

The granting of a rehearing is discretionary with the board and its order in such respect is appealable only for an abuse of such discretion: Hosterman v. Best, 158 Pa. Superior Ct. 617, 45 A. 2d 872.

Where a claimant suffered the loss of his eye but was denied compensation by the board when his testimony was that "something splashed in his eye," the board was held to have abused its discretion in refusing claimant a rehearing when his petition for rehearing averred that the liquid from a barrel which had

been soaked in a "green flake solution" had splashed in his eye. A certificate of analysis of the "green flakes" allegedly used in the solution indicated that the chemical was sodium hydroxide: Gaffey v. John J. Felin Co., 162 Pa. Superior Ct. 222, 57 A. 2d 432. The Superior Court, in reversing the order of the board and remitting the record to it, stated that, page 226, "in a case such as this the board well might have granted a rehearing to receive all evidence available on the issue of causal connection between the accident and the loss of the eye." The court further held, page 227, that: "In the interest of justice to an injured claimant liberality in procedure is contemplated by The Workmen's Compensation Act."

In the case of Fedak v. Dzialdowski, 101 Pa. Superior Ct. 346, the Superior Court reversed the order of the board refusing petition for rehearing where claimant was unfamiliar with English and her rights and after the hearing she discovered additional material evidence.

In Owatt v. Rodman's Beverage, 169 Pa. Superior Ct. 339, 82 A. 2d 255, the Superior Court reversed the board's refusal to grant claimant a rehearing after the referee disallowed compensation and the board affirmed said finding. The court held that it was an abuse of discretion in that claimant's petition for a rehearing offered proof of his prior health, pages 343, 344: "and under the circumstances it was not conclusive of claimant's right to a rehearing that before the Referee he did not unequivocally testify that he strained or twisted his back at the moment of experiencing pain, in the performance of his usual work. He did state in response to a somewhat involved question put to him by the Referee: 'I could have been in the wrong position or twist.' The subject was not pursued further to elicit from claimant whether or not the injury was

actually caused by a 'strain, sprain or twist.' In this connection, bearing upon claimant's right to a rehearing, the affidavit of the surgeon who operated on claimant is to the effect that if called as a witness he would testify that in his opinion the rupture of the disc resulted from the injury in September 1946, and that the 'injury is of a type not likely to occur unless some unusual exertion, strain or twist was made.'

"One of the objects of the Compensation Law is to give a claimant full opportunity to present any competent evidence that is available so that the fact finders may reach the real merits of the case. Petrovan v. Rockhill Coal & Iron Company, 130 Pa. Superior Ct. 58, 64, 196 A. 516. In our view a rehearing is necessary in this case to do justice to this claimant."

The issue before us is almost identical with that of the Owatt case. Both cases are back injuries. Part of Owatt's duties was to load and unload cases of beverage. While swinging empty cases from one truck to another, he experienced pain in his lower back region and worked irregularly thereafter until forced to cease work completely. The injury was diagnosed as a ruptured disc. Since the referee found that claimant was performing his usual work in the usual manner at the time of the injury to his back and was suffering at the time from a residual disability to his right leg from a former injury, the question of whether that disability affected his posture in transferring the cases from one truck to another was involved. Owatt used similar language to the words in question in the instant case. Owatt said: "I could have been in the wrong position or twist." Dr. Rodriguez testified: "It could have. . . ." As in the Owatt case, this subject was not pursued further. Both the petitions for rehearing in the Owatt case and in the instant case had doctor's affidavits attached in each of which appeared unequivocal opin-

ions of the direct relationship of accident with disability.

We believe the board abused its discretion in refusing to grant a rehearing on claimant's petition in the instant case. There is no doubt but that the referee based his award on the testimony of Dr. Rodriguez and that the board affirmed the referee's award likewise on the testimony of said doctor. The board's opinion refusing the petition for rehearing states in part as follows: "However since the referee has made an award in favor of claimant and, in fact, based the said award on the testimony of Dr. Rodriguez, all of which was affirmed by this board, we do not believe that a rehearing is justified."

It is important to note that at no point in the testimony did Dr. Rodriguez state that he was unable to express an opinion as to whether the accident of February 24, 1953, produced claimant's disability. According to his affidavit attached to claimant's petition for rehearing, it is his professional opinion that claimant's disability was the direct result of her fall which occurred during her employment. There is nothing in his testimony contradictory to this averment. Having begun his practice in Lewistown approximately a year before the hearing at which he testified, he states under oath that he did not believe a doctor was entitled or expected to give an opinion as to causal effect unless he could be positive. Undoubtedly Dr. Rodriguez was being unnecessarily cautious and was under the misapprehension of what is expected of a medical expert where such an opinion can be given. To refuse to permit the doctor to give his opinion might result in miscarriage of justice. This is not a case where an effort is being made to strengthen or remold a doctor's testimony. This is the case of a claimant petitioning for the opportunity to have the doctor who attended her supplement his testimony on an important phase not as

yet answered by him. Claimant seeks to supply an omission material to the issue.

The cases cited by counsel for defendant are distinguishable from the instant situation. Conti v. Butler Consolidated Coal Company, 169 Pa. Superior Ct. 276, 82 A. 2d 528, holds that the board's authority to grant a rehearing is to be liberally administered in the interest of a claimant but the act does not intend that new hearings shall continue indefinitely. The court further stated that claimant had demonstrated over a period of more than a year that his injuries did not affect his ability to perform his work. In Hosterman v. Best, supra, it was held the board did not abuse its discretion in denying a rehearing where the testimony of another physician would merely corroborate the previous medical testimony that claimant was suffering from blood poisoning and which would be at variance with other medical experts that claimant was suffering from chronic nephritis. In Fronko v. United States Sanitary Manufacturing Company, 155 Pa. Superior Ct. 636, 39 A. 2d 363, the board's refusal to grant a second rehearing where claimant had been bumped on the elbow and subsequently died of bronchial pneumonia was held to have been in proper exercise of its discretion.

If this be the type of case requiring medical testimony to show the causal connection between the accident and disability, the board misconceived the law regarding adequacy of medical testimony. It is abundantly apparent that the board was fully satisfied as to its adequacy. Here the board was in error if medical testimony of causal relationship between accident and disability is required. Rather than pass upon the question at this time of whether or not such medical testimony is necessary in the instant case, we are remanding the record to the board so that Dr. Rodriguez may be recalled.

*Decree*

And now, October 16, 1956, claimant's appeal from the decision of the workmen's compensation board dated May 29, 1956, denying the petition of claimant for rehearing is sustained, the board's order refusing to grant rehearing is reversed and the record in the within case is remitted to the workmen's compensation board for further hearing and determination. An exception is noted to Harry L. Siegel, Esq., counsel for defendant.

*Opinion Sur Reargument*

LEHMAN, P. J., June 3, 1957.—By our opinion and decree of October 16, 1956, we sustained claimant's appeal from the decision of the board denying her a rehearing. We reversed the board's order and remitted the record to the board for further hearing and determination. Thereafter, counsel for defendant petitioned for reargument on the ground that three of the cases cited in our opinion as authority for the court to order a rehearing where the board's discretion had been abused had not been cited by counsel and that counsel had not been afforded an opportunity to distinguish them from the instant case and that if a rehearing be granted after reargument, counsel for defendant requests a clarification of our order so as to be permitted to present additional relevant testimony.

A reargument was ordered and after a thorough examination of the authorities and a careful consideration of written briefs and oral arguments, we believe that our decree of October 16, 1956, should be reaffirmed with the right on the part of each party to produce any and all relevant testimony.

There is no need to repeat what we said in our opinion that supported our decree of October 16, 1956. Counsel for defendant contends that the Gaffey, Fedak and Owatt cases cited by us are distinguishable from

the instant case in that in the Gaffey and Owatt cases, claimant had no counsel and in the Fedak case, counsel first learned of the case on the day it was heard and claimant was illiterate. While it is true that lack of counsel or an inadequate opportunity to advise counsel were factors that entered into the determination to grant rehearings in these cases, these factors were not controlling. In Gaffey v. John J. Felin Co., 162 Pa. Superior Ct. 222, 57 A. 2d 432, the Superior Court reversed the order of the board and remitted the record to it by holding that the board's refusal to grant a rehearing to receive all evidence available on the issue of causal connection between the accident and the loss of the eye was an abuse of discretion. In Fedak v. Dzialdowski, 101 Pa. Superior Ct. 346, the Superior Court reversed the board's order refusing rehearing where claimant was unfamiliar with the English language and sought to present after discovered material evidence. In Owatt v. Rodman's Beverage, 169 Pa. Superior Ct. 339, 82 A. 2d 255, the appellate court held that the board abused its discretion in refusing claimant's petition for a hearing so as to be enabled to offer proof of his prior good health. . . .

The cases cited by counsel for defendant are readily distinguishable from the instant case. In Conti v. Butler Consolidated Coal Co., 169 Pa. Superior Ct. 276, 82 A. 2d 528, the lower court was held to have erred in remanding the case to the board for reconsideration of claimant's petition for a rehearing after the referee had ordered his compensation terminated because the board's findings of fact were explicit and sustained by competent evidence. The referee had granted three continuances to claimant to afford him an opportunity to present testimony of his disability. Furthermore, claimant had worked continuously for more than a year following his medical discharge and had demonstrated that his injury had not affected his ability to

perform his former work. In reversing the lower court, the Superior Court held that: "although the Act is to be liberally administered in the interest of a claimant it does not intend that new hearings shall continue indefinitely": Page 279.

In Lopen v. Economy Coat, Apron, Towel and Linen Supply Co., 163 Pa. Superior Ct., 593, 63 A. 2d 109, the board was sustained in its refusal to grant rehearing because, according to the board, "the additional testimony . . . would tend to contradict expert opinion of higher authority already adduced in claimant's behalf."

In Hosterman v. Best, 158 Pa. Superior Ct., 617, 45 A. 2d 872, claimant's petition for a third rehearing was refused where the doctor whose testimony claimant sought to present had examined claimant more than four years after the claimant became acutely ill and his testimony would merely corroborate the previous medical testimony that claimant was suffering from metallic poisoning and which would be at variance with other medical experts that claimant was suffering from chronic nephritis.

Counsel for defendant relies chiefly upon the case of Fronko v. United States Sanitary Manufacturing Company, 155 Pa. Superior Ct. 636, 39 A. 2d 363. On November 8, 1935, Fronko sustained accidental injuries in the course of his employment as a result of bumping his elbow against a bowl. He worked for 12 days but was forced to cease work because of pain. Compensation was paid him by agreement until November 29, 1936. Following the accident arthritis developed in his arm and later extended to various parts of his body. Upon his admission to a hospital on November 5, 1936, it was determined he was suffering from an "acute infectious arthritis of long standing." Fever therapy treatments were given until pleurisy developed, which was followed by bronchial pneu-

monia and his death ensued from the latter disease on December 1, 1936. His widow in her claim alleged her husband's death was due to the accident. The employer contended it was the result of natural causes. After hearing the testimony, consisting principally of the four doctors called by claimant, the referee made an award but the board reversed on the ground the medical testimony was not sufficiently definite to establish a causal connection between the accident and death from bronchial pneumonia about a year later. The lower court returned the record to the board for further hearing. After further testimony by one of the doctors who had previously testified and two others called by claimant, the referee dismissed the petition and this was affirmed by the board. Thereafter, claimant asked for a second rehearing to recall the same three doctors who had testified at the first rehearing so that they could give more explicit testimony to meet the legal standard of causal connection. The board refused claimant's request for a second rehearing but the lower court again remitted the record for further rehearing, following which an award was made by the referee and affirmed by the board and the lower court. The Superior Court reversed and held that the board was not guilty of abuse of discretion in not granting the second rehearing. The appellate court quoted the testimony of Dr. Sherill, called by claimant and in whose care the deceased was when he died, who testified unequivocally that there was no connection between the accident and the lowered resistance and decedent's death from pneumonia. Dr. Sherill's answer to this question was: "I don't think so, you are going too far."

The Fronko case dealt with an effort by claimant, after her claim was disallowed, to obtain a second rehearing. The doctor best able to give an opinion as to

whether there was a causal connection, when called by claimant, testified emphatically there was no such connection between the accident and death. Claimant sought to recall Dr. Bernhardy for the third time and two other doctors for the second time. This was clearly an effort to strengthen and reform weak proofs already presented in a cause that had been adjudged as having no merit.

On the other hand, both the referee and board have decided in favor of claimant in the instant case. After opposing counsel had contended the evidence of causal connection between accident and disability was insufficient, claimant sought a rehearing to add to the record additional medical testimony to supply the omission that in no way contradicts claimant's medical testimony. When the board refused claimant's petition for rehearing on the ground the testimony was not necessary because it had decided the case in her favor, this was an abuse of discretion based upon a misconception of the legal standard required of medical proof.

We accordingly reaffirm our decree of October 16, 1956, and so that there be no misunderstanding that each party may produce any and all relevant testimony at said rehearing we enter the following

### Amended Decree

And now, June 3, 1957, claimant's appeal from the decision of the workmen's compensation board dated May 29, 1956, denying the petition of claimant for rehearing is sustained, the board's order refusing to grant rehearing is reversed and the record in the within case is remitted to the workmen's compensation board for further hearing and determination, with the right of each party to produce any and all relevant testimony at said hearing. An exception is noted to Harry L. Siegel, Esq., counsel for defendant.